(Decided December 21st, 1898.)

---

## JOSEPH WRIGHT *vs.* THE STATE OF MARYLAND.

*Evidence—Admissibility of Statement made as Part of the Res Gestae.*

Upon a trial for murder evidence of a statement made by the prisoner a few minutes after he had left the scene of the homicide, and when he had had time for reflection is not admissible in his behalf as part of the *res gestae.*

Appeal from the Circuit Court for Talbot County (PEARCE, C. J., STUMP and MARTIN, JJ.).

The cause was submitted on briefs by:

*Harrison W. Vickers* and *Richard D. Hynson,* for the appellant.

*Harry M. Clabaugh, Attorney-General, John D. Urie* and *Clayland Mullikin,* for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant was convicted of murder in the first degree in the Circuit Court for Talbot County, to which

county the case was removed from Kent County where the homicide occurred. Although the record sets out at some length the proceedings in the cause, there is but one question presented by it, and that is the ruling of the Court below on an objection made by the State to the offer.to prove by one Joseph Johnson a statement made to him by the prisoner shortly after the shooting of the deceased, William Newcomb. It is contended on behalf of the appellant that the statement was made under such circumstances and at such a time as to be a part of the *res gestae* and that is denied by the State. The record does not disclose what the statement was, but the Court refused to admit it.

No inflexible rule can be adopted as to what lapse of time between the commission of an act and a declaration made, should exclude the declaration as not being a part of the *res gestae.* Each case must depend upon its own facts and circumstances. The act or declaration sought to be proven must, however, be so connected with the transaction as to be a part of it and great care should be exercised by the Courts to prevent abuse of the rule that admits in evidence, under proper conditions, the unsworn statement of an accuser or an accused in his own favor. They should be certain that such statements are not the result of premeditation, design or effort to inculpate another or to excuse one's self. In 21 *Ency. of Law,* 111, the rule is thus stated : " Acts or declarations unconsciously associated with and relative to the principal act charged as an offence against the accused from its inception to its consummation and final completion are admissible as part of the *res gestae;* but declarations made after all action on the part of the wrongdoer, actual or constructive, has ceased, or declarations made before the commission of the offence and entirely disconnected therewith, are not part of the *res gestae* and should not be admitted." Mr. Wharton in his work on Criminal Evidence, section 262, says : " *Res gestae* are events speaking for themselves, through the instinctive words and acts of . . . participants, not the words and acts of participants when narrating the

events.   What is done or said by participants, under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks."

In this case we find that immediately after the shooting, the prisoner ran out of the store where it took place, and then as soon as the witness Johnson satisfied himself that Newcomb was dead, he became frightened and also ran out of the store, and as he did so the prisoner was under a tree near the store " hollering and whooping."   The witness went into a lot behind a house on the opposite side of the road and says he remained there about a minute and a half and then gave this account of what took place:  " When I was in the lot I was out of sight of the prisoner; *I staid in the lot until I got over my scare or excitement, and thought it over,* and thought I had better go to the festival at the church (which was nearby), and tell the people there about the shooting; I suppose it was not over five minutes after the shooting when I come out of the lot and talked with the prisoner Wright; it was not long; I was in the lot about a minute and a half; when I came out the prisoner had stopped ' hollering and whooping '; he was by himself; he was about twenty-five or thirty yards from me when I came out of the lot and I went straight up to him and had a talk with him (the prisoner) about the shooting of Newcomb, when the prisoner made a statement to witness about the shooting."

Thus we see that the witness had time to get over his " scare or excitement " and to think the matter over. The prisoner had then stopped " hollering and whooping " and according to his own testimony he was going to the festival.   He had been on the stand before Johnson was called and after stating he was drunk and that he did not know when the shooting occurred and did not see Newcomb that night, that he knew of, said, " Joe Johnson first told me that I had shot Newcomb; I told him I was sorry; I do not know whether he told me at the festival or along the road as I was going to the festival at the church "; Johnson said he supposed

it was not over five minutes after the shooting when he talked with the prisoner, but however that may have been both Johnson and the prisoner evidently had time for reflection and what was then said between them could only have been a narrative of the events and was not a part of the transaction itself. The prisoner had run out of the store immediately after the shooting, had stopped outside "hollering and whooping," but had been there long enough to stop that noise and, if he is to be believed, he was either at the church festival or on the way there when he had the conversation with Johnson. Evidence of what he then said was clearly not admissible on his offer as part of the *res gestae.* It would be a most dangerous practice to admit in evidence a statement made by the prisoner under such circumstances as those disclosed by this record, and one that cannot be sanctioned in this State even if there be any authority for it elsewhere, as contended by the appellant. There being no other exception, the judgment must be affirmed.

*Judgment affirmed.*

(Decided December 21st, 1898.)