616 A.2d 356

Ivan Antonio MEJIA

v.

STATE of Maryland.

No. 15, Sept. Term, 1992.

Court of Appeals of Maryland.

Dec. 9, 1992.

524

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Ivan Antonio Mejia, the petitioner, on trial in the Circuit Court for Montgomery County for rape and related sexual offenses, challenged, as discriminatory, the State's use of one of its peremptory challenges to exclude a venireperson the petitioner alleged to be Hispanic. The court overruled his objection and the trial proceeded, resulting in the petitioner's conviction of attempted rape in the second degree and second degree sexual offense. The petitioner's appeal to the Court of Special Appeals raised one issue: whether, when he objected below, he presented a *prima facie* case of purposeful discrimination, requiring the State's response. The intermediate appellate court affirmed the trial court's judgment. *Mejia v. State,* 90 Md.App. 31, 599 A.2d 1207 (1992). We granted certiorari to consider what proof a moving party is required to produce to establish a *prima facie* case of purposeful discrimination against Hispanics.

## I.

The jury *voir dire* began on January 7, 1991. Although the record does not reflect any discussion of an "Hispanic problem" prior to its start, early in the *voir dire* proceedings, the petitioner's counsel noted his failure to submit a question concerning whether any venirepersons spoke Spanish. Agreeing to ask the question, the court volunteered that, "[W]hen I get to it, [I am going to ask] whether they have prejudices caused by the fact that he needs an interpreter."[1]

Juror No. 131, Peter Estrada, responded to a question concerning legal training and informed the court that he had once worked as a legal clerk in a law office in New York City and, about four or five years earlier, attended Antioch Law School for a semester. The following colloquy between counsel and the court then occurred:

[The Petitioner's Counsel]: As far as I can tell, I noticed that that is the only juror with a[n] Hispanic background. I wanted to note that for the record in terms of jury strikes later that Mr. Estrada, as far as I can tell, is the only juror with an Hispanic background.

THE COURT: You noticed that?

[The Petitioner's Counsel]: I don't know what will come of it, but I just wanted to mention it.

Subsequently, the court inquired whether any member of the venire had been the victim of, a witness to, or charged with, either a crime of violence or a crime against property. A Ms. Porto reported that she had been robbed at gunpoint in Bethesda, which prompted the petitioner's counsel to ask if she remembered "if the person was white or black or

---

**1.** By line filed with the court on October 3, 1990, the petitioner made a request for "a Spanish speaking interpreter, for all proceedings...." The State having interposed no objection, the request was granted by court order dated October 10, 1990. We may conclude, therefore, that the petitioner either did not speak English or did not speak it fluently enough to be able to understand the proceedings against him without such assistance.

Hispanic?" No motion to strike Ms. Porto for cause was made when she responded that the perpetrator was "black."

At the end of the bench conferences that that question generated, the following occurred:

THE COURT: ... All right, now we will—I am about ready to go to the Hispanic problem.

[Prosecutor]: Do you want us to stay up here?

THE COURT: You might as well. Tell me after I finish this, be thinking ahead—I don't go down the list. Tell me what you think I should cover if I haven't done it.

(Whereupon, the bench conference was concluded.)

THE COURT: Ladies and gentlemen of the prospective jury panel, as you can see, the defendant, Mr. Mejia, does not speak English or does not speak it fluently enough to be able to understand all of the proceedings that are taking place in English.

He, therefore, has a Spanish interpreter. Is there any member of the panel who feels that this is so prejudicial to you that you would be unable to give Mr. Mejia a fair and impartial trial?

Does anyone here speak and understand Spanish? Mr. Estrada? [2]

■ The final relevant occurrence in the unfolding of the "Hispanic problem" came during the empaneling of the jury. The State peremptorily struck Mr. Estrada, whereupon the petitioner's counsel requested a bench conference, at which the following occurred:

---

**2.** Because no member of the venire, not even Mr. Estrada, whose name the court called, affirmatively stated that he or she spoke or understood Spanish, the Court of Special Appeals concluded that no member of the jury panel spoke Spanish. *Mejia v. State,* 90 Md.App. 31, 45, 599 A.2d 1207, 1214 (1992). The petitioner proffers, and the State does not object, that venireperson Estrada stood in response to the court's question, indicating an affirmative answer, which the court acknowledged by calling his name.

[The Petitioner's Counsel]: I am going to object to this on the grounds of the [Batson [3]] case: We have an Hispanic defendant charged with raping a non-Hispanic or white woman. There is only one Hispanic person on the jury panel. The State has used its strike to strike that person.

There have been three strikes used by the State. Now there is this one and one earlier one that was used to strike a potential black juror.

Basically, I'm going to object to his strike on the surface as a racially motivated strike that is taking out the only Hispanic juror in a panel of 50 people.

THE COURT: Motion denied.

When challenging the State's use of its peremptories to strike Mr. Estrada, the petitioner stated explicitly what previously may have been only implicit, that he was Hispanic and that the State was striking the only person on the venire identified by anyone as Hispanic.

The record is clear; at no time during the proceedings did the prosecutor voice the view that there really was no "Hispanic problem," that the petitioner was not Hispanic, that Mr. Estrada did not have an Hispanic background, or that other panel members did, or may have. Neither does the record reflect any remarks by the court that suggested that it was concerned that the record did not adequately chronicle sufficient facts for *Batson* purposes. The court's ruling was made immediately after the petitioner's counsel

---

**3.** Since it decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court has held that a white defendant may challenge the prosecution's use of peremptories to exclude black jurors, *Gorman v. Maryland*, —— U.S. ——, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991); *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Therefore, it is now quite clear that the defendant or, indeed, the moving party, need not be a member of the group discriminated against in order to have standing to challenge that discrimination. The Court has also sustained *Batson* challenges brought by the prosecution. *See Georgia v. McCollum*, —— U.S. ——, 112 S.Ct. 931, 117 L.Ed.2d 103, (1992) (the use of peremptory challenges for purposeful discrimination against a cognizable racial group is objectionable whether done by the prosecution or by the defense). *See also United States v. DeGross*, 913 F.2d 1417 (9th Cir.1990).

had argued in support of his *Batson* motion. Not only was the ruling made before the State offered an explanation for striking Mr. Estrada, but it was made without affording the State the opportunity to do so.

## II.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court of the United States held, for the first time, that a defendant "may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. The Court said

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 (citations omitted).

█ The cognizable racial group at issue in *Batson,* as in our cases applying the *Batson* rule, *see State v. Gorman,* 324 Md. 124, 596 A.2d 629 (1991); *Gray v. State,* 317 Md. 250, 562 A.2d 1278 (1989); *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989); *Tolbert v. State,* 315 Md. 13, 553 A.2d 228 (1989); *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (1988),

was blacks. Blacks are not the only cognizable group to which the *Batson* rule applies, however.[4] The Supreme Court has recognized its application to "Latinos" and "Hispanics."[5] *Hernandez v. New York,* 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In that case, the issue was the adequacy of the prosecution's explanation for its striking of "Latino" or "Hispanic" jurors. While they disagreed on that point, not one of the justices expressed the belief that the State properly could peremptorily strike all Hispanics from the venire. See also *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), in which the Supreme Court observed, "it is no longer open to dispute that Mexican–Americans are a clearly identifiable class.... [and, in that context,] Spanish surnames are just as easily identifiable as race...." *Id.* at 495, 97 S.Ct. at 1280, 51 L.Ed.2d at 511. The State does not disagree.

### III.

The Court of Special Appeals held that, since the petitioner failed to present a *prima facie* case of discriminatory use of peremptory challenges, the trial court properly overruled the petitioner's motion. It explained that (1) the

---

**4.** Other cognizable groups for *Batson* purposes, have been recognized by other courts. In *United States v. Biaggi,* 853 F.2d 89, 96 (2d Cir.1988), the court applied *Batson* to Americans of Italian descent; use by the Government of most of its peremptory challenges to strike jurors "with apparently Italian surnames" made out *prima facie* case. In *Commonwealth v. Gagnon,* 16 Mass.App. 110, 449 N.E.2d 686, 690–693 (1983), the Massachusetts intermediate appellate court, applying its State Constitution, recognized persons of French–Canadian origin, as reflected in, *inter alia,* French surnames, as "a group with distinct cultural and linguistic traditions." *See Gov't of Virgin Islands v. Forte,* 865 F.2d 59 (3rd Cir.1989) (white venirepersons); *Roman v. Abrams,* 822 F.2d 214 (2nd Cir.1987) (same); *United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987) (Native Americans). See also *United States v. DeGross,* 913 F.2d 1417 (9th Cir.1990) in which the court applied *Batson* to prohibit the use of peremptories to discriminate on the basis of gender.

**5.** The Supreme Court observed that there is no distinction between "Latino" and "Hispanic". *Hernandez v. New York,* 500 U.S. ——, ——, 111 S.Ct. 1859, 1864, 114 L.Ed.2d 395, 403 (1991).

petitioner made no sufficient showing of a "predicate 'pattern of strikes' from which an inference, permissible or impermissible, could even arise," *Mejia,* 90 Md.App. at 41, 599 A.2d at 1212; (2) "[t]he prosecutor's questions and statements during *voir dire* examination and in exercising his challenges [did not] support ... an inference of discriminatory purpose," *id.,* quoting *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; and (3) the petitioner failed to prove that either he [6] or Mr. Estrada was "Hispanic," and, in addition, did not prove that the remaining members of the venire were not. 90 Md.App. at 43–46, 599 A.2d at 1213–14.

Defining an Hispanic as one who speaks Spanish as a native language, has a Spanish surname, and is of Latin–American origin, a definition it characterized as "amorphous and imprecise," 90 Md.App. at 44, 599 A.2d at 1213, the intermediate appellate court elaborated on why it concluded that the evidence was insufficient to prove that there was an "Hispanic problem". In particular, while assuming that the petitioner met the first two criteria, *i.e.* speaks Spanish as a native language and has a Spanish surname, the court noted a total absence of evidence, and hence, proof of his Latin–American origins. As to Mr. Estrada, the court held that a Spanish surname, standing alone,[7] is not a sufficient foundation upon which to build the *prima facie* case. That the evidence was insufficient to establish a

---

**6.** Although the Court of Special Appeals addressed whether the appellant proved that he was Hispanic, and concluded that he had not successfully done so, it also recognized, as it had to, that such proof is not now essential. *Mejia,* 90 Md.App. at 45, 599 A.2d at 1214. *See infra* n. 2.

**7.** As we have seen, the Court of Special Appeals' reading of the record to indicate that no member of the venire spoke Spanish is incorrect. Its opinion, however, does not provide any clue as to how it would have come out had it believed that Mr. Estrada spoke Spanish. It is likely that, if not on the same basis, the court probably would have found a failure to establish a *prima facie* case with regard to the non-Hispanic status of the remainder of the venire.

*prima facie* case as to the non-Hispanic status of the remainder of the jury panel was also clear, the court said:

Except for counsel's self-serving *ipse dixit* in this regard, however, there was no basis for such a conclusion with respect to the rest of the panel. From the jurors, including alternates, who were accepted or challenged, we can comb the record and come up with the surnames of 28 members of the 50–person panel. With respect to the other 22, however, there is nothing in the record to give us even the surnames, let alone any information beyond the names. For all we know, they may all have had Spanish surnames. Again, the burden of making a record was upon the appellant.

90 Md.App. at 46, 599 A.2d at 1214.

### IV.

The position of the Court of Special Appeals and of the State is straightforward: In the absence of an express stipulation by the State, a defendant may establish a *prima facie* case of purposeful discrimination only by presenting evidence to prove, or from which may be inferred, all of the requisite elements of that *prima facie* case. A proffer, even when neither contradicted nor challenged by the prosecutor or the court, is not sufficient.

■ The determination whether a *prima facie* case of purposeful discrimination has been presented necessitates consideration of the nature of the *prima facie* case required by *Batson,* an issue we addressed at length in *Stanley.* The burden of establishing the *prima facie* case is, of course, on the party challenging the use of peremptories. *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85; *State v. Gorman,* 315 Md. 402, 410, 554 A.2d 1203, 1207 (1989), *vacated,* — U.S. —, 111 S.Ct. 1613, 113 L.Ed.2d 712 (1991); *Stanley v. State,* 313 Md. at 71, 542 A.2d at 1277. Unless it is established by a preponderance of the evidence, no response by the other party is necessary. *Id.* at 71, 542 A.2d at 1277.

■■■■ In the *Batson* context, *"prima facie* case" refers to " 'the establishment of a legally mandatory, rebuttable presumption' ", *Stanley*, 313 Md. at 60, 542 A.2d at 1272, quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207, 216 n. 7 (1981), not to the plaintiff's burden of producing sufficient evidence to permit a trier of fact to infer the fact at issue. Whether the requisite *prima facie* showing has been made is the trial judge's call, 313 Md. at 60, 542 A.2d at 1272, quoting *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88, which must be made in light of all of the relevant circumstances. *Id.* Relevant circumstances that "might give rise to or support or refute" *id.* [313 Md.] at 61, 542 A.2d at 1272, such showing include "a 'pattern' of strikes against ... jurors [of the cognizable group] in the particular venire, or the prosecutor's questions and statements during the voir dire examination and the exercise of peremptory challenges...." *Id.* at 60, 542 A.2d at 1272. Once the moving party makes a *prima facie* showing of purposeful discrimination, the burden shifts to the other party "to come forward with a neutral explanation for challenging [the members of the cognizable group]." *Id.* at 61, 542 A.2d at 1271. The ultimate burden of proof is always on the moving party and it is to persuade the court that there has been intentional racial discrimination. *Id.* citing *Batson*, 476 U.S. at 94 n. 18, 106 S.Ct. at 1721 n. 18, 90 L.Ed.2d at 86 n. 18 and *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.

■■ In order to make the *prima facie* showing *Batson* requires, the moving party must "prove by a preponderance of the evidence that the peremptory challenges were exercised in a way that shifts the burden of production to the State and requires it to respond to the rebuttable presumption of purposeful discrimination that arises under certain circumstances." *Stanley*, 313 Md. at 71, 542 A.2d at 1277. The cognizable group allegedly discriminated against having been identified, proof that the person or persons peremptorily struck is or are members of that group and that

the use of those strikes was the product of purposeful discrimination, is a necessary part of the showing.

Whether a particular individual is a member of a group that, for *Batson* purposes, unquestionably is a cognizable one, is a question of fact. The determination of whether the evidence of that fact is sufficient, *prima facie,* depends on the totality of the circumstances. Of some significance in that regard is whether the parties agree or disagree on the point. Where the defendant proffers, or asserts, that a particular individual is a member of the cognizable class, for purposes of assessing whether something additional will be required to be produced by way of proof, the totality of the circumstances would include how, if at all, the State responded to the proffer or assertion. This, in turn, will depend upon the bases, as revealed by the record, for the proffer or the assertion.

Group membership is not always proven by specific and tangible evidence. Parties often indulge certain assumptions, make certain observations, and draw certain conclusions about an individual and his or her relationship to a group. They often express their conclusions as fact. When the parties' conclusions agree, there being no dispute, the moving party need not further prove the point, *i.e.,* adduce any evidence. *Stanley* is an example. There, the State and the defense agreed that eight of the nine persons struck by the State were black. Even though they did not agree as to the ninth, the circumstances of that case made it unnecessary to resolve the issue. No evidence as to the race of the non-disputed group members was produced or required to be produced. The court accepted the parties' agreement. *Trice v. State,* the companion case to *Stanley,* on appeal, presented a similar scenario. Without any apparent foundation in the evidence—the court did not refer to any tangible evidence presented to prove the race of the subject venireperson—it was stated unequivocally, and without contradiction or question, that the venire in that case contained only one black person. 313 Md. at 81, 542 A.2d at 1282.

In those cases, it is likely that the critical "proof" consisted of the defendant's visual observations, as, judging from their lack of a contradictory assertion, confirmed by those of the State and the court. Ordinarily the observations with respect to who is black, for example, whether made by the defendant or the State, will not produce conflicting results. When they do, however, that fact can be expected to be noted. *See Stanley,* 313 Md. at 69, 542 A.2d at 1276. Such conflicts may be resolved either by the moving party producing evidence or by testing the moving party's "proof" by application of the burden of proof.

Visual observations, along with other criteria, such as surnames, language, etc., developed during *voir dire,* undoubtedly are utilized in connection with identifying members of cognizable racial or ethnic groups, including Hispanics. When, based on such observations and criteria, a party states, as a fact, his or her conclusion concerning the composition of the venire or that a particular venireperson is a member of a group, against whom the party alleges peremptory challenges are being discriminatorily used, and, the other side, being aware of the critical criteria and having had the opportunity to make similar observations, does not challenge that assertion, the fact will be deemed established. The moving party logically could have assumed that the non-moving party does not disagree and, so, may have foregone the offer of any tangible proof he or she may have.[8] If there is no disagreement as to the issue of

---

**8.** Setting out in the record, in detail, the bases for reaching the conclusion that a particular person is a member of a particular ethnic or racial group is critical. The statement of the moving party's conclusion should also enumerate the observations and assumptions upon which the conclusion is based. The more detailed the statement, the greater the incentive it provides the striking party to state any disagreement it may have. For example, if the moving party notes an accent and a general appearance, which indicates, to the moving party, that the venireperson is Hispanic, the other side, having the benefit of those details and having been apprised of the precise characteristics which prompted the conclusion, will be hard pressed not to note any differences it may have with the moving party without, in the process, conceding the issue.

group membership, there is no need for the production of additional evidence or even a ruling on that point. If the non-moving party does not agree with the observation of the moving party, however, that party should and, indeed, may be expected to, state that disagreement. This is especially so since, ultimately, the purpose of the observation is to, and it may, in fact, form the basis for that party's challenge, as discriminatory and, thus, improper, of the striking party's exercise of peremptories.[9]

This situation may be analogized to that in which one who is present during a conversation has been held to have, by his or her silence, tacitly admitted some or all of the statements made by the speaker. We most recently dis-

---

9. The court may also prompt the moving party to adduce evidence other than a proffer to support the *Batson* showing. *United States v. Esparsen*, 930 F.2d 1461 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992), cited by the State, is illustrative. There, the court rejected the defendants' challenge to the prosecution's use of peremptories because of their failure to "establish with certainty the racial identity of the venire members struck by the prosecution." 930 F.2d at 1466. It explained:

Defendants' claim that Ms. Armijo, Ms. Martinez, Ms. Lucero, Ms. Castillo, Mr. Rivera, and Mr. Zamora are Hispanics appears to rest solely on their surnames. While such an inference seems plausible, it rests on the assumptions that these surnames are Hispanic, and that people with Hispanic surnames are Hispanic. For instance, some of the four women might have Hispanic surnames only because they married Hispanics. Although we recognize that racial identity may be clear from appearances during *voir dire*, we cannot sustain a *Batson* challenge on conjecture. Moreover, even appearances do not always provide a reliable guide, *as shown by the trial court's initial opinion that the Esparsens did not appear Hispanic.* (Emphasis supplied)

*Id.* In that case, therefore, there was a question, *albeit* raised by the court, concerning proof of the racial identity of the venirepersons. Here, that question was not raised either by the court or by the State. Similarly, in *U.S. v. Campione*, 942 F.2d 429 (7th Cir.1991), responding to the defendant's challenge to the Government's exercise of peremptory challenges to exclude "Italian surnamed jurors," on the basis that "Italian–Americans are a recognizable ethnic group," the trial judge said: "I don't believe *Batson* extends to any ethnic group in the population and I am not sure that these people are necessarily Italian–Americans." 942 F.2d at 433 (footnote omitted). The Government shared the latter reservation. *Id.*

cussed this concept in *Henry v. State*, 324 Md. 204, 240–42, 596 A.2d 1024, 1042–43 (1991). We noted the prerequisites that must be satisfied to constitute a statement a tacit admission:

"(1) the party heard and understood the other person's statement; (2) at the time, the party had an opportunity to respond; (3) under the circumstances, a reasonable person in the party's position, who disagreed with the statement would have voiced that disagreement."

*Id.* at 242, 596 A.2d at 1043, quoting 6 Lynn McLain, *Maryland Evidence* § 801(4).3 at 312–13 (1987) (footnote omitted). These prerequisites are present in this case.

From the record, it is obvious what the petitioner's foci were during *voir dire*. One was to identify persons with "Hispanic" background for *Batson* purposes. That this is so is amply demonstrated by the petitioner's statement to the court that Mr. Estrada was the only juror with an Hispanic background, a point which he raised, he indicated, "for the record in terms of jury strikes." Discovering whether any venireperson spoke Spanish provided an objective and, yes, an additional criteria by which to identify who, among the venire, had an Hispanic background. In addition to being sensitive to the possibility that the State might use its peremptories to exclude Hispanics, the petitioner also sought to identify venirepersons who should be disqualified for cause. Thus, he asked a venireperson who had been a victim of a crime whether the perpetrator had been Hispanic.

Because that issue has already been dispositively resolved, *see Hernandez supra*, we are not concerned, in this case, with whether "Hispanics" is a cognizable group.[10]

---

10. *United States v. Campione*, 942 F.2d 429 (7th Cir.1991); *United States v. DiPasquale*, 864 F.2d 271 (3rd Cir.1988), *cert. denied, sub nom., DiNorscio v. United States*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *United States v. Sgro*, 816 F.2d 30 (1st Cir.1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1021, 98 L.Ed.2d 986 (1988) and *Munoz v. Keane*, 777 F.Supp. 282 (S.D.N.Y.1991), all relied upon by the State are inapposite. Their primary focus is on the *prima facie*

Our concern is, rather, whether the petitioner presented a *prima facie* case that either he or Mr. Estrada, or both, is "Hispanic."

At no time, from the first mention of an "Hispanic problem" to the denial of the petitioner's objection to the State's striking of Mr. Estrada did the prosecutor make any comment, or observation contradicting the petitioner's express proffer. In fact, the *voir dire* proceedings, viewed as a whole, supports the petitioner's argument that the parties, and the trial judge, agreed that there was an "Hispanic problem." Just as what the prosecutor may say or ask during *voir dire* may be relevant, in the totality of the circumstances, to determining the prosecutor's motive in exercising peremptories, what the prosecutor does *not* say in the face of an assertion of fact is quite important on the question of the adequacy of the petitioner's *Batson* showing.

Accepting the State's position would mandate, whenever purposeful discrimination against a cognizable group is alleged, that a full-fledged adversary hearing be held to determine who is, or is not, a member of that cognizable racial group. That issue would have to be tried even though there is no apparent dispute as to a venireperson's membership in the cognizable group at issue. Lest it be said that he or she failed to make the requisite *prima facie* showing, the moving party would have to produce evidence to prove the composition of the venire and the race of each venireperson even when a person's membership in the cognizable racial group at issue, being dependent largely on visual observations, is more or less obvious. The trial process could become quite unwieldy.

The State's position also does not take account of the role that perception plays in the use of peremptories. It is the striking party's belief that a venireperson is a member of the cognizable group, not the proof of that fact, that

---

showing of the existence of a cognizable racial group, not proof that a particular venireperson is a member of that group.

prompts that party peremptorily to challenge that venire-person. The moving party's proffer tests that perception. When the striking party, in effect, accepts a proffer that an individual is a member of a cognizable group, against which it is alleged that peremptories are being used discriminatorily, he or she should be bound by it.

The trial judge, who made no specific findings, did not explain his ruling denying the petitioner's motion. Nor did he "enumerate the *Batson* criteria or articulate any specific bases for finding a lack of a prima facie showing...." 313 Md. at 70, 542 A.2d at 1277. As in *Stanley,* the relevant facts are not in dispute; thus, we may exercise our independent constitutional judgment to determine what should be concluded from those facts. *Id.* at 71, 542 A.2d at 1277. We conclude that, where, as here, neither the State nor the court expressed any disagreement with the petitioner's proffer of the preliminary fact that a venireperson was the only Hispanic in the venire, a *prima facie* showing of *that fact* was made. We also hold that, where the record reveals that but one person with an Hispanic background was in the venire and the State struck that person, it may be concluded that a *prima facie* case of purposeful discrimination has been proven. *Id.*

Since the petitioner's position is correct, there was only one person with an Hispanic background in the entire venire, when that person was struck, more than the striking of one juror occurred. By that one strike, one hundred percent of the Hispanics in the venire were stricken. We have already held that "when the State uses peremptories in a manner that assures that *no* [members of a cognizable group] will serve on a jury that is to try a [member of that cognizable group], it is at least permissible to conclude that a prima facie case of discrimination has been made out." *Stanley,* 313 Md. at 87, 542 A.2d at 1285. In that circumstance, it is the effect of the use of the peremptories—exclusion of all Hispanics from the venire—not what was said or asked during *voir dire,* that is dispositive. *See United States v. Chalan,* 812 F.2d 1302, 1314 (10th Cir.

1987) (striking "last remaining juror of defendant's race is sufficient to 'raise an inference' that the juror was excluded 'on account of [his] race....' ").

## V.

It remains to be determined what the appropriate remedy is; ought we order a new trial or remand to the trial court so that the prosecution will be able to offer, if any it has, race neutral reasons for the peremptory exclusion of Mr. Estrada? Resolution of that question largely depends upon the circumstances surrounding the judge's ruling.

In *Stanley*, we were persuaded, in the interest of fairness, to remand for further proceedings because the State was never given an opportunity to respond to the defendant's *prima facie* showing. *See* 313 Md. at 76, 88, 542 A.2d at 1279, 1286. In *Gorman*, the prosecutor refused to give any reasons for the exercise of peremptories, asserting, as was the law at the time, that he did not have to. 324 Md. at 127, 596 A.2d at 630. Nevertheless, that fact, the case having arisen pre-*Batson*, was reason enough to reject the defendant's argument that a new trial should be ordered as a sanction for that refusal. In neither *Stanley* nor *Gorman* did we conclude that the lapse of time—in *Stanley*, "some two years since the original jury selection," 313 Md. at 76, 542 A.2d at 1279, and in *Gorman*, more than six years, 324 Md. at 130, 596 A.2d at 632—was a sufficient basis on which to order a new trial, rather than a limited remand.

 Less than two years have passed since jury selection began in the case *sub judice*. Under our precedents, that is not a sufficient lapse of time to justify a grant of a new trial without affording the prosecution the opportunity to provide racially neutral reasons for its exercise of the subject peremptory challenge. Moreover, the State was not given the opportunity to explain its striking of Mr. Estrada. Immediately after the petitioner's counsel concluded his argument in support of the *Batson* motion, the court denied the motion, without pausing, or asking, for the State's

input. We, therefore, do not know whether the State had a race neutral reason for the exercise of the peremptory. Consequently, notwithstanding that *Batson* had long since been decided before the proceedings in this case occurred, fairness still dictates that we give the State the opportunity to explain, if it can, why it struck Mr. Estrada.

The procedure, on remand will be as described in *Stanley*, 313 Md. at 77–80, 542 A.2d at 1280–82. As in *Gorman*, *see* 324 Md. at 130, 596 A.2d at 632, should it appear that there is no reasonable possibility that the circumstances surrounding the striking of Mr. Estrada can be reconstructed fairly, then a new trial may be required and the trial judge may order one.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, CASE REMANDED WITHOUT AFFIRMANCE OR REVERSAL TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.

ELDRIDGE, J., concurs in the result only.