778 A.2d 1096

**Mantice PARKER**

v.

**STATE of Maryland.**

**No. 9, Sept. Term 2000.**

Court of Appeals of Maryland.

Aug. 21, 2001.

Elisa A. Long, Asst. Public Defender, and Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Zoe M. Gillen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief) Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL, and HARRELL, JJ.

ELDRIDGE, Judge.

Mantice Parker, the defendant and petitioner in this criminal case, was tried by a jury in the Circuit Court for Baltimore City on several counts charging assaults and illegal use of a handgun, based on the shooting of two persons. During the jury selection, the State challenged the defendant's use of peremptory strikes as discriminatory, claiming a pattern of racially based strikes against white prospective jurors. The trial court sustained the State's objection regarding two prospective jurors and reseated the stricken persons on the jury panel. The trial proceeded, and Parker was convicted. Parker appealed, and the Court of Special Appeals affirmed. We granted a petition for a writ of certiorari to consider whether the trial court's actions regarding the two jurors were erroneous under the principles of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny.

### I.

On the evening of October 14, 1996, a man armed with a gun got out of a blue Ford Taurus automobile and chased Jamal Jones down Barclay Street in Baltimore City. Jones ran inside the residence at 2111 Barclay Street. The man with the gun followed him inside and shots were fired. Jones sustained a gunshot wound to the arm, and Angelena Richardson, an eight-year old child who had also been inside, sustained several wounds to her arm and back. After the shots, the man with the gun got into the blue Ford automobile and drove away.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

The police arrived within minutes after the shooting, and witnesses described the gunman and his vehicle. They also gave the police a partial Maryland license tag number for the vehicle. An investigation revealed that the defendant Parker had been issued a license tag number for a Ford Taurus encompassing the partial license tag number observed by the witnesses, and that his vehicle matched the description given by the witnesses. Witnesses interviewed by the police on the night of the shooting viewed a photographic array and identified Parker as the gunman. Two witnesses also furnished the police with written statements implicating Parker in the crime.

Toward the end of jury selection at Parker's trial, the prosecutor objected to defense counsel's use of peremptory challenges against several white prospective jurors on the ground that the strikes were racially discriminatory. The following colloquy took place:

"THE COURT: Yes [defense counsel]. You owe me an explanation. Start with [juror number] 26. Juror 26 was seated originally in seat 8.

DEFENSE COUNSEL: She is employed by the Criminal Assignment Office. I think that that is somewhat problematic. I don't want a person employed by Criminal Assignment sitting on my jury.

THE COURT: All right.

PROSECUTOR: May I answer that?

THE COURT: You may.

PROSECUTOR: Your honor, the juror answered that question and said she could be fair so I find that reason to be an unacceptable reason.

THE COURT: I find it unacceptable as well. Okay. Go ahead.

DEFENSE COUNSEL: Juror number 27, I struck people who had doctors' appointments because I don't want somebody who has a doctor's appointment worrying about that [rather] than my trial.

PROSECUTOR: I find that unacceptable because this Court made it clear to the venireman, that the Court

would go out of its way to [accommodate] that person with doctors' appointments.

DEFENSE COUNSEL: Doesn't mean that person will not be preoccupied with the fact that they have a doctor's appointment scheduled [rather] than paying attention to the details of the trial, that [juror 27] has made enough of a point to approach the bench about it means [that he is] thinking about it. That person also happens to be 66 years old.

\* \* \* \*

[We are] [t]alking about somebody more concerned about their health than my trial. It is enough of a concern for me.

PROSECUTOR: They are people who said they could be fair.

THE COURT: I will put a question mark on that.

\* \* \* \*

THE COURT: What about juror number 30?

DEFENSE COUNSEL: Judge, with that person, ever since the person was seated in the jury over there, I kept an eye on him and he kept looking back in our direction and I felt uncomfortable about him as a juror.

PROSECUTOR: I felt he was looking at me, too. But not being a psychiatrist I can't read people's minds. It is not a reason to eliminate people from the jury.

DEFENSE COUNSEL: I don't know if he's looking at me and my client because my client happens to be a black male. But he was looking directly at him the entire point in time he was there. Made me feel uncomfortable, that he would be an improper juror.

\* \* \* \*

DEFENSE COUNSEL: Juror 11 said she was the victim of [a] breaking and entering, when she was up at the bench she said she could be unbiased, and I looked at her in the eye and—

THE COURT: I don't think so. [Juror number] 38?

DEFENSE COUNSEL: I struck that person because, again, her position as a physician, she indicated to the Court if she didn't work, somebody was going to have to work a double shift. She made that point very clear, and I am more interested in having somebody not worried about someone working a double shift for them than if somebody is going to be a juror on a panel.

PROSECUTOR: The problem I have, in sixteen years, I know this to be the truth, jurors worried about their private lives, if you bring each and every juror, if you asked them if they were concerned about their private lives, the answer would be, you bet you. That is not a reason. I think that is unacceptable.

THE COURT: I agree. That is unacceptable.

\* \* \* \*

THE COURT: The physician lady, I'll give you the benefit on that. The physician lady which was [juror number] 38, juror number 11 [the victim of a breaking and entering], don't bring her back. [Juror number] 30 [the man looking at defense counsel]. I don't have a problem. That was a neutral reason. [Juror number] 29 was a neutral reason. So as we stand, only [juror number] 26 [the criminal assignment clerk] is unacceptable. We'll go with that.

DEFENSE COUNSEL: Even though she is exposed to the criminal docket every day of the week?

THE COURT: So am I. She never—no. I think that is unacceptable. I really do. That is an unacceptable reason.

PROSECUTOR: Otherwise, they couldn't send a summons at all or to me, or to the judge.

THE COURT: All right.

PROSECUTOR: What about the one you had a question mark on?

THE COURT: Well—

PROSECUTOR: That would not interfere.

THE COURT: That was Tuesday. Also [juror number] 27 [the juror with the doctor's appointment] comes back. That is unacceptable."

Thus, the trial court reseated juror 26, the criminal assignment clerk, and juror 27, the man with the doctor's appointment. The court stated that the reasons given by defense counsel for striking jurors 26 and 27 were "unacceptable." The court, however, overruled the prosecutor's objections to the striking of juror 11, the victim of a breaking and entering, juror 30, the man looking at defense counsel, and juror 38, the physician, finding the reasons proffered by defense counsel for these strikes "neutral" or "acceptable."

Upon conclusion of the trial, the jury convicted Parker of second degree assault, use of a handgun in the commission of a violent crime, and unlawfully carrying a handgun. Parker appealed to the Court of Special Appeals, and the intermediate appellate court affirmed in a reported opinion, *Parker v. State*, 129 Md.App. 360, 742 A.2d 28 (1999).

Parker filed in this Court a petition for a writ of certiorari seeking review of the trial court's rejection of defense counsel's reasons for striking two prospective jurors and reseating them on the jury panel. Additionally, Parker asks this Court to decide whether the trial court erred in admitting certain hearsay statements of two unidentified declarants into evidence under the "excited utterance" exception to the rule against hearsay. We granted the petition. *Parker v. State*, 358 Md. 381, 749 A.2d 172 (2000).

II.

It is now settled law that peremptory challenges may not be exercised to exclude members of a cognizable racial group from the jury panel. *See Harley v. State*, 341 Md. 395, 402, 671 A.2d 15, 18–19 (1996); *Gilchrist v. State*, 340 Md. 606, 619, 667 A.2d 876, 882 (1995); *Mejia v. State*, 328 Md. 522, 534, 616 A.2d 356, 361 (1992). In *Batson v. Kentucky, supra*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the Supreme Court established a three-step process for address-

ing allegations of impermissible discrimination in the exercise of peremptory challenges. This Court has previously reviewed the procedure set forth in *Batson* and its progeny. We explained in *Gilchrist v. State, supra,* 340 Md. at 625–626, 667 A.2d at 885–886:

"First, the complaining party has the burden of making a *prima facie* showing that the other party has exercised its peremptory challenges on an impermissibly discriminatory basis, such as race or gender. *See Batson,* 476 U.S. at 93–97, 106 S.Ct. at 1721–1723, 90 L.Ed.2d at 85–88. Moreover, '[w]hether the requisite *prima facie* showing has been made is the trial judge's call....' *Mejia v. State, supra,* 328 Md. at 533, 616 A.2d at 361."

"Second, once the trial court has determined that the party complaining about the use of the peremptory challenges has established a *prima facie* case, the burden shifts to the party exercising the peremptory challenges to rebut the *prima facie* case by offering race-neutral explanations for challenging the excluded jurors. The 'explanation must be neutral, related to the case to be tried, clear and reasonably specific, and legitimate.' *Stanley v. State,* 313 Md. 50, 78, 542 A.2d 1267, 1280 (1988). The reason offered need not rise to the level of a challenge for cause, *Batson v. Kentucky, supra,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. 'At this step of the inquiry, the issue is the facial validity of the explanation.' *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991). It is insufficient, however, for the party making the peremptory challenges to 'merely deny[ ] that he had a discriminatory motive or ... merely affirm[ ] his good faith.' *Purkett v. Elem, supra,* [514 U.S. at 769], 115 S.Ct. at 1771, 131 L.Ed.2d. at 840. *See also Chew v. State,* 317 Md. 233, 242, 562 A.2d 1270, 1277 (1989); *Tolbert v. State,* 315 Md. 13, 19, 553 A.2d 228, 230 (1989)."

"Finally, the trial court must 'determine[ ] whether the opponent of the strike has carried his burden of proving purposeful discrimination.' *Purkett v. Elem, supra,* [514 U.S. at 768], 115 S.Ct. at 1771, 131 L.Ed.2d at 839; *Hernan-*

*dez v. New York, supra,* 500 U.S. [at] 359, 111 S.Ct. at 1865, 114 L.Ed.2d at 405; *Batson v. Kentucky, supra,* 476 U.S. [at] 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88–89. This includes allowing the complaining party an opportunity to demonstrate that the reasons given for the peremptory challenges are pretextual or have a discriminatory impact. *Stanley v. State, supra,* 313 Md. at 61–62, 542 A.2d at 1272–1273. It is at this stage 'that the persuasiveness of the justification becomes relevant.' *Purkett v. Elem, supra,* [514 U.S. at 768], 115 S.Ct. at 1771, 131 L.Ed.2d at 839. . . . 'At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.' *Purkett v. Elem,* [514 U.S. at 768], 115 S.Ct. at 1771, 131 L.Ed.2d at 839."

■ Parker asserts that, having found a *prima facie* case of discrimination in defense counsel's use of peremptory challenges, defense counsel tendered facially-valid, race-neutral reasons for exercising the strikes against jurors 26 and 27. The reasons given, Parker contends, were sufficient to overcome the *prima facie* case with regard to those two jurors. We agree that the trial court erred in rejecting the facially-valid, race-neutral reasons tendered by defense counsel for exercising the peremptory strikes and reseating the two stricken jurors on the panel. We shall, therefore, reverse the defendant's conviction and order a new trial.

Upon finding a *prima facie* case of racial discrimination in defense counsel's use of peremptory challenges, the trial court stated: "You owe me an explanation." The defense counsel responded by explaining that he had struck juror 26 because she is employed by the Criminal Assignment Office. The prosecutor responded that juror 26 had stated that she could be "fair" and, that, therefore, defense counsel's reason was "unacceptable." The trial court agreed and pronounced defense counsel's reason for striking juror 26 "unacceptable." Turning to juror 27, defense counsel explained that he had struck prospective jurors that had doctors' appointments. The prosecutor again claimed that defense counsel's explanation was "unacceptable" because juror 27 said that he could be

"fair." The court eventually deemed defense counsel's reason for striking juror 27 also "unacceptable." Without further explanation or making additional findings, the trial judge sustained the prosecutor's objection to the peremptory challenges exercised against jurors 26 and 27, and proceeded to reseat the stricken jurors on the jury panel.

This Court has recognized that a trial court's determination of impermissible discrimination in the exercise of peremptory challenges is ultimately a factual one and, as such, is afforded deference on appeal. *Gilchrist v. State, supra,* 340 Md. at 627, 667 A.2d at 886. Nevertheless, the record in the case at bar does not support a conclusion that the two peremptory strikes at issue were racially motivated. Accordingly, we hold that the trial court erred in rejecting the reasons proffered by defense counsel with regard to jurors 26 and 27.

Defense counsel tendered specific explanations for exercising peremptory strikes against jurors 26 and 27. Juror 27 had earlier indicated to the trial judge that he had an "absolutely compelling reason" which made it "impossible" for him to serve, namely his doctor's appointment. Parker's attorney explained that juror 27 might be more concerned about his doctor's appointment than the fair trial of the defendant. Defense counsel further stated his belief that the criminal assignment officer, juror 26, would be less sympathetic to his client because she is exposed to criminal cases every day. The reasons were neutral on their face, based on factors other than race, and specific to the individual jurors stricken. Moreover, the reasons were not " 'implausible or fantastic' " so as to support an inference that the explanations were merely pretexts for intentional discrimination. *Gilchrist v. State, supra,* 340 Md. at 626, 667 A.2d at 886, quoting *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). The trial court did not make any findings to the contrary or articulate any factors that would indicate otherwise.

Indeed, the colloquy indicates that the trial court agreed with the prosecutor that, because prospective jurors 26

and 27 answered that they could be "fair," defense counsel's reasons were "unacceptable" to support peremptory strikes. A prospective juror's statement that he or she has the ability to be fair, however, does not preclude a valid peremptory challenge of that juror. If the juror had stated otherwise, an exclusion for cause would have been justified. As this Court noted in *Gilchrist v. State, supra,* " 'the peremptory [challenge] permits rejection for a real or imagined partiality that is less easily designated or demonstrable' than that required for a challenge for cause." 340 Md. at 620, 667 A.2d at 883, quoting *Swain v. State of Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772 (1965).

■ Under the circumstances presented in this case, the reasons tendered by defense counsel for exercising the peremptory challenges to jurors 26 and 27 were sufficient to overcome a *prima facie* case of racial discrimination. The trial judge erred in deeming the facially-valid, race-neutral reasons "unacceptable" and in reseating the stricken jurors. The defendant is entitled to a new trial.

### III.

■ The defendant Parker next argues that the trial court erred in admitting into evidence the hearsay statements of two unidentified declarants pursuant to the excited utterance exception to the rule against hearsay. Although we have reversed the conviction on the peremptory challenge issue, and thus need not reach this question, we shall address the evidentiary question because it might arise again at Parker's new trial.

Officer Kevin Feser of the Baltimore City Police Department testified that he was the first police officer on the scene, arriving at 2111 Barclay Street within minutes after the shooting. Upon entering the residence, he observed bullet casings and blood throughout the living room and kitchen. Officer Feser encountered two women in the residence, both of whom, he testified, were "visibly upset." He described the older woman as "almost like hysterical," and he testified that

she was "crying, running back and forth" in a "panic." The other woman was "crying [and] emotional." The women made statements about the gunman to Officer Feser. The officer testified that he remembered the substance of the women's statements, but that he could not identify the women by name and that he could not recall precisely which words were spoken by which woman.

The prosecutor then asked Officer Feser to tell the jury what the women told him. Defense counsel objected on the ground of hearsay. The trial court overruled the defense counsel's objection, holding that the statements were admissible into evidence under the "excited utterance" exception to the rule against hearsay. The officer proceeded to testify that the women told him that they were in the residence when a black male came into the residence followed by another black male who was shooting at him. The women, the officer testified, described the gunman as "a black male, 5 foot 11, 5–10, 5–11, medium build, plaits in the hair, wearing blue jeans and a white T-shirt and one of the ladies said that he was driving a blue Ford Taurus station wagon, and I got a partial tag [number]."

The defendant argues that the trial court erred in admitting the statements of the two unidentified witnesses under the excited utterance exception because the State did not establish the requisite elements of personal observation and spontaneity. The statements, the defendant asserts, did not qualify as excited utterances because the officer had no knowledge of the declarants' whereabouts at the time of the shooting and could not, therefore, establish that the women personally observed the incident. The defendant further argues that, because the women had the capacity to report a physical description of the gunman and provide a partial licence plate number, their statements were the products of thoughtful reflection in response to police interrogation and, therefore, lacked the requisite indicia of reliability to be admissible as excited utterances.

We begin our discussion by noting that hearsay is generally inadmissible at trial because of its inherent untrust-

worthiness. "Exceptions to the rule usually involve those situations where circumstances lend credibility to the statement, thus vitiating the reason for the rule." *Mouzone v. State*, 294 Md. 692, 696, 452 A.2d 661, 663 (1982). Maryland case law and Maryland Rule 5–803(2) recognize such an exception for "[a] statement relating to the startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In *Mouzone*, 294 Md. at 697, 452 A.2d at 664, Judge Cole for the Court discussed the rationale for the excited utterance exception:

> "The essence of the excited utterance exception is the inability of the declarant to have reflected on the events about which the statement is concerned. It requires a startling event and a spontaneous statement which is the result of the declarant's reaction to the occurrence. McCormick, *Evidence* § 297 (2nd ed.1972). The rationale for overcoming the inherent untrustworthiness of hearsay is that the situation produced such an effect on the declarant as to render his reflective capabilities inoperative. *See Wright v. State*, 88 Md. 705, 41 A. 1060 (1898). *See also,* McCormick, *supra,* § 297. The admissibility of evidence under this exception is, therefore, judged by the spontaneity of the declarant's statement and an analysis of whether it was the result of thoughtful consideration or the product of the exciting event."

The proponent of a statement purporting to fall within the excited utterance exception must establish the foundation for admissibility, namely personal knowledge and spontaneity. Parker does not argue that an excited utterance is inadmissible simply because the declarant is unidentified. *Cf. Booth v. State*, 306 Md. 313, 325, 508 A.2d 976, 981–982 (1986) ("Identification of the declarant, while often helpful in establishing that he or she was a percipient witness, is not a condition of admissibility [under the present sense impression exception]"). Parker does argue, however, that the proponent of an excited utterance carries a heavier burden in meeting the foundation for admissibility where the declarant is unidentified.

An examination of the cases in other jurisdictions indicates that, where the identity of the hearsay declarant is unknown, the courts hold that the party seeking to introduce the excited utterance carries a heavy burden to prove the requisite indicia of reliability. It is held that the burden on the proponent is heightened, primarily because it is more difficult to establish personal observation and spontaneity where the declarant is unknown. For example, in *Miller v. Keating*, 754 F.2d 507 (3rd Cir.1985), the United States Court of Appeals for the Third Circuit considered the admissibility of a hearsay statement of an unidentified declarant at the scene of an automobile accident. The unknown bystander made a remark amounting to an accusation that the accident was the fault of one of the parties. The United States Court of Appeals explained (754 F.2d at 510):

"A party seeking to introduce such a statement carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness.

"At minimum, when the declarant of an excited utterance is unidentified, it becomes more difficult to satisfy the established case law requirements for the admission of a statement under [the excited utterance exception]."

The Court of Appeals cautioned that, in determining admissibility, "circumstantial evidence of [spontaneity and] the declarant's personal perception must not be so scanty as to forfeit the 'guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule." 754 F.2d at 511. The record, the court pointed out, was void of any circumstances from which it could be inferred that the declarant personally observed the accident and that the declarant was excited when he spoke. Thus, the court held the proponent of the hearsay statement had not satisfied the burden of admissibility for the excited utterance exception. *See also United States v. Mitchell*, 145 F.3d 572 (3rd Cir.1998).

Similarly, the Appellate Division of the New York Supreme Court held the statement of an unknown bystander inadmissible in *People v. Alexander*, 173 A.D.2d 296, 569 N.Y.S.2d 689 (1991). The defendant in that case was charged with burgla-

ry. The trial court allowed the prosecution to elicit testimony from a police officer that the officer was informed by a crowd of twenty or thirty people that they saw the defendant climb out of a second story window and descend a fire escape. The appellate court reversed, holding that, under the circumstances, "there is no proof of the identity of the declarants or of whether they had an 'adequate opportunity to observe' the event." 173 A.D.2d at 298, 569 N.Y.S.2d at 691, quoting *People v. Caviness,* 38 N.Y.2d 227, 232, 379 N.Y.S.2d 695, 700, 342 N.E.2d 496, 499 (1975). It was error, the court concluded, to permit such testimony.

■ We agree with Parker that where the hearsay declarant is unidentified, heightened scrutiny of the purported excited utterance is appropriate. The hearsay statement of an unknown or anonymous declarant presents serious concerns as to whether sufficient trustworthiness can be established. Notwithstanding the heightened burden, however, the requisite elements of personal observation and spontaneity were established under the circumstances in this case.

■ Preliminarily, we point out that the declarants here were not entirely unidentified, but they were simply unnamed. The responding officer described the two women who made the statements in the officer's presence, observed their emotional state, and spoke to the women about the shooting. This is hardly the situation of the anonymous, unknown bystander making a statement from a crowd. *See, e.g., State v. Hill,* 331 S.C. 94, 501 S.E.2d 122 (1998) (hearsay statement of unidentified bystander in a crowd was inadmissible because it could not be demonstrated that the declarant witnessed the shooting or that the declarant was under the stress of the excitement when the statement was made); *State v. Harris,* 207 W.Va. 275, 531 S.E.2d 340 (2000) (hearsay statement of "unavailable, anonymous, unknown" declarant who shouted from a crowd that defendant had beaten the victim was inadmissible where it was not accompanied by requisite indicia of reliability).

Turning to the personal knowledge requirement, the content of the statements and the surrounding circumstances clearly

show that the declarants personally observed the shooting. *See State v. Jones,* 311 Md. 23, 30–31, 532 A.2d 169, 172 (1987) (hearsay statements of the unidentified declarants were admissible under the present sense impression exception where the contents of the statements were sufficient to support the conclusion that declarants spoke from personal knowledge); *Booth v. State, supra,* 306 Md. at 325, 508 A.2d at 982 ("[w]hen the statement itself, or other circumstantial evidence demonstrates the percipiency of a declarant, whether identified or unidentified, this condition of competency is met"). The police arrived at the scene of the crime within minutes of the shooting. The responding officer testified that the women were emotional and visibly shaken. The women stated to the officer that they were in the residence when two men ran through the residence. Thus, we conclude that the State met its burden of establishing personal observation.

The defendant Parker additionally challenges the spontaneity of the declarations, arguing that the descriptions of the vehicle and the gunman were the products of reflective thought in response to police interrogation. The petitioner relies, in part, on this Court's decision in *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928), in which the Court held that the declarant's announcement of a license plate number was the result of a voluntary, deliberate investigation made by the declarant and that, therefore, the statement was inadmissible as an excited utterance. Parker's argument is not persuasive.

In *Mouzone v. State, supra,* we explained that the decision in *Neusbaum* demonstrated that whether the declarant's statement is exclaimed impulsively or is the result of the inquiry of another party is not dispositive but, instead, is only one factor to be considered in the admissibility of an excited utterance. Compare *State v. Harrell,* 348 Md. at 78, 82, 702 A.2d 723, 728 (1997) (statement that the defendant "beat me up" in response to a police inquiry was admissible as an excited utterance where the police questioning commenced minutes after the assault and the victim was still emotionally overwhelmed by the situation), with *Mouzone v. State, supra,*

294 Md. at 700–701, 452 A.2d at 665–666 (statement given to the police by a witness to a double murder, five hours after the incident, was not admissible under the excited utterance exception). The record in the case at bar is unclear whether the police asked the women to explain what happened or whether the women impulsively began to recount the events. Assuming *arguendo* that the statements were made in response to police questioning, this would not necessarily bar their admission.

In *Mouzone*, we stressed the importance of examining the surrounding circumstances for an indication that the startling event dominated the declarant's thought process when the statement was made. In *Neusbaum*, the Court held that the declarant's statement regarding the license plate number was outside of the excited utterance exception because the declarant had overcome the shock of seeing a person hit by a car and had begun a course of measured, deliberate thought. This, however, is not the situation here. As the Court of Special Appeals aptly noted (*Parker v. State, supra,* 129 Md.App. at 395 396, 742 A.2d at 47),

> "the declarants' statements established that they had just witnessed a startling 'event' that consisted of a man running into 2111 Barclay Street in chase of another man, shooting a gun, and then leaving the scene in a vehicle. The declarants had not observed the incident from a distance or from a point of safety. Rather, they were in the midst of it. When they made their remarks to Officer Feser moments later, they had perceived and to some extent absorbed the event and were excitedly exclaiming about it. Their perception of the physical characteristics of the shooter and the vehicle was part and parcel of their experience of the startling event, the effects of which still were evident. It was not the product of an after-the-fact deliberate effort on their part to gather information."

The record indicates that the startling event of the shooting dominated the thought processes of the declarants when the statements were made. The women's statements were not the

thoughtful reflection or product of deliberate investigation held inadmissible in *Neusbaum.* The State met its burden of demonstrating spontaneity.

In sum, the content of the statements and the surrounding circumstances were sufficient proof that the women personally observed the shooting and that the descriptions of the gunman and the car were given under the excitement of the situation. The trial court properly admitted the statements into evidence.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*