792 A.2d 359

**Douglas Alphonso CUTCHIN, Jr.,**

**v.**

**STATE of Maryland.**

**No. 195, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

March 1, 2002.

Martha Weisheit, Asst. Public Defender and Jamie Cane (Student Attorney Under Rule 16)(Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Zoe Gillen White, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before HOLLANDER, JAMES R. EYLER, and SONNER, JJ.

JAMES R. EYLER, Judge.

Appellant, Douglas Alphonso Cutchin, Jr., was convicted by a jury in the Circuit Court for Prince George's County of manslaughter by motor vehicle, homicide while driving intoxi-

cated, homicide while driving under the influence of alcohol, driving while intoxicated, driving under the influence of alcohol, negligent driving, failure to return to the scene of an accident, and failure to render assistance. After merger for purposes of sentencing, the circuit court sentenced appellant to ten years' imprisonment for the conviction of manslaughter by motor vehicle and five years' imprisonment for the conviction of failure to return to the scene of an accident, to be served concurrently. The court suspended all but eighteen months.

## Questions Presented

1. Did the trial judge's admission of hearsay identifying the appellant as the driver violate the appellant's right of confrontation?

2. Did the trial judge err in ruling that appellant's statements to his liability insurer about the accident were not protected from disclosure?

3. Did the trial judge err in refusing to grant a new trial after defense counsel discovered that certain exhibits had gone to the jury without the redactions agreed to by the judge?

We shall answer the third question in the affirmative and reverse the judgments. For the guidance of the parties and the circuit court, we shall answer the first two questions in the negative.

## Facts

On August 19, 1999, appellant and his friend, Tony Gardner, were in a motor vehicle that went out of control and struck a tree. Gardner died as a result of injuries received in the accident.

Matthew Dellinger, a witness for the State, testified that as he approached the scene of the accident, he noticed someone stagger in the road and then enter a wooded area. He noticed the car that had been involved in the accident, as well as a second car with three unidentified individuals standing near it,

who had stopped because of the accident. Dellinger explained to the individuals, two males and a female, that he had seen someone in the roadway. One of the individuals stated that the person was the driver of the vehicle involved in the accident. Dellinger noticed a person, later identified as Gardner, in the back seat of the accident vehicle. Shortly thereafter, the unidentified individuals who had stopped because of the accident left the scene. When the police arrived, Dellinger explained that he had seen a man in the roadway and pointed out where he had seen the man enter a wooded area.

The police officers testified that they found appellant lying in the woods. Appellant was combative and intoxicated but ultimately was subdued and restrained. Subsequent tests reflected a blood-alcohol level of 0.19 percent, and a blood test was positive for marijuana.

James St. Hill, a State Farm Insurance Company adjuster, also testified for the State. He stated that appellant's wife was the holder of a liability policy issued by State Farm, and appellant was a listed driver on the policy. Gardner was not listed on the policy. St. Hill testified that, on November 2, 1999, he participated in a conference call with appellant and appellant's attorney. At that time, St. Hill took a recorded statement from appellant. Appellant did not identify the driver of the vehicle in that statement. St. Hill testified, however, that the recording device apparently stopped and, according to his notes, appellant told him that Gardner was driving the vehicle at the time of the collision.

In light of St. Hill's testimony, which seems favorable to appellant, we elaborate on appellant's complaint. Appellant explains that the State attacked the credibility of St. Hill and appellant by implying that appellant told St. Hill he was the driver, and St. Hill omitted it from the statement. The State contended St. Hill omitted it because it was in the interest of appellant and State Farm, with respect to appellant's criminal defense and civil defense, if a civil suit were filed, for Gardner to be the driver.

Sergeant Robert Stratton testified for the State as an accident reconstruction expert. He opined that appellant had been seated behind the steering wheel, and Gardner had been seated in the right front seat at the time of the ·collision. Charles Pembleton testified for the defense as an accident reconstruction expert. He opined that Gardner had been driving the vehicle at the time of the collision.

## Discussion

### 1.

After a hearing out of the presence of the jury, Dellinger was permitted to testify that an unidentified individual at the scene of the accident told him that appellant was the driver of the vehicle. The statement was admitted as an excited utterance or as a present sense impression, both exceptions to the hearsay rule. *See* Md. Rule 5–803(b)(1),(2).

Appellant does not contest application of the exceptions; rather, he contends that admission of the evidence violated his constitutional right to be confronted by the witnesses against him. Appellant states that the Supreme Court has held that a hearsay statement is admissible only if it bears adequate indicia of reliability. Appellant recognizes that the Supreme Court has stated that reliability can be inferred when the evidence falls within a firmly rooted hearsay exception. *See Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Appellant further recognizes that excited utterance and present sense impression are firmly rooted exceptions, but argues (1) there is no way to determine whether the declarant's statement was based on observations or was merely a conclusion, (2) the identification was not sufficiently connected to the startling event to be reliable, and (3) the declarant was unidentifiable. In essence, appellant challenges reliability and trustworthiness and maintains that, because the declarant was unidentified, the court should apply a higher standard of scrutiny. *See Parker v. State,* 365 Md. 299, 315, 778 A.2d 1096 (2001).

In *Parker*, the Court of Appeals evaluated the admissibility of unidentified declarants' statements, admitted into evidence under the excited utterance exception. The defendant claimed that the trial court erred in admitting the statements because "the officer [testifying] had no knowledge of the declarants' whereabouts at the time of the shooting and could not, therefore, establish that the women personally observed the incident." *Parker*, 365 Md. at 312, 778 A.2d 1096.

The Court first agreed with the defendant that "where the hearsay declarant is unidentified, heightened scrutiny of the purported excited utterance is appropriate," because the indicia of reliability are less clearly present. *Id.* at 315, 778 A.2d 1096. The Court then explained that the declarants were merely unnamed, rather than unidentified, since the officer testifying described the declarants, witnessed their emotional condition, and discussed the incident (a shooting) with them. Regarding the personal knowledge requirement, the Court opined that, because the police officer arrived within minutes of the shooting and observed that the women were visibly upset, and because the women said they were present during the shooting and described the event in detail, the State had satisfied its burden. *See id.* at 315–16, 778 A.2d 1096. The Court concluded by finding that

> the content of the statements and the surrounding circumstances were sufficient proof that the women personally observed the shooting and that the descriptions of the gunman and the car were given under the excitement of the situation. The trial court properly admitted the statements into evidence.

*Id.* at 318, 778 A.2d 1096.

The factual situation in the case before us is similar to *Parker*. Dellinger testified that the conversation occurred approximately one and one-half minutes after the accident. Dellinger observed that the declarant was visibly agitated. The declarant indicated that she was present when appellant exited the vehicle and described the accident to Dellinger. In addition, Dellinger testified that the driver's side door was

open when he arrived. At a hearing outside the presence of the jury, Dellinger testified that one of the males identified the person as the driver, whereas before the jury, he testified that he thought it was the woman who made that statement. At the hearing outside the presence of the jury, Dellinger also testified, however, that all three persons agreed on the observation. As in *Parker*, the declarant's observations with respect to the driver of the vehicle were " 'part and parcel of their experience of the startling event.' " *Id.* at 317, 778 A.2d 1096 (quoting *Parker v. State*, 129 Md.App. 360, 395–96, 742 A.2d 28 (2000)). In *Parker*, the Court stated that the content of the statements and the surrounding circumstances showed that the declarants observed the shooting involved in that case. In the case before us, the declarant indicated that she was present when appellant exited the vehicle. Even under the heightened scrutiny standard, we perceive no error in the circuit court's ruling on this issue.

## 2.

Appellant, implicitly recognizing that there is no insured-insurer privilege, contends that his statements,. as an insured, to St. Hill, as a representative of his liability insurer, were protected by the attorney-client privilege.[1] Appellant points out that the driver of the vehicle was not identified in the recorded portion of the statement, but St. Hill testified that, based on his notes of the conversation, appellant told him that Gardner had been driving the vehicle. The State argued that

---

1. Appellant also argued below that the statements were protected by the work product doctrine, but he does not pursue that argument on appeal. The work product doctrine and attorney-client privilege are not coextensive. The work product doctrine protects matters prepared in anticipation of litigation or for trial and is subject to a showing of substantial need (mental impressions, conclusions, opinions, and legal theories are not subject to that exception). Md. Rule 2–402. The attorney-client privilege is held by the client, while the work product doctrine gives protection to the lawyer. *See Blair v. State*, 130 Md.App. 571, 605, 747 A.2d 702 (2000). In any given fact situation, both the doctrine and the privilege may be available, or one and not the other. They must be analyzed separately, but there is no need to address the work product doctrine in this case because it is not before us.

the omission in the recorded statement was intentional because it was in the interest of both appellant and State Farm that appellant not be the driver. In support of his contention that his statements to St. Hill were privileged, appellant acknowledges that there is no Maryland appellate opinion on point and relies on cases from other jurisdictions taking the "broad view" of the attorney-client privilege in insured-liability and indemnity insurer relationships.

The State initially suggests that the issue has not been preserved for appeal. The State maintains that because appellant's attorney cross-examined St. Hill regarding the substance of appellant's communications, the right to appeal the issue of privilege has been waived. Prior to trial, appellant's attorney moved to quash a subpoena directed to St. Hill's file. The motion was denied. After the file was produced over objection, its contents were ultimately admitted into evidence over objection. The subsequent cross-examination of St. Hill by appellant's counsel did not effect a waiver of the privilege.

Further, the State argues that, in circuit court, the issue was limited to whether the attorney-client privilege between appellant and his attorney protected the statement in question and whether that privilege was waived by St. Hill's presence on the telephone. Appellant's attorney did reference the privilege now being argued, however, acknowledging that there was no Maryland case on point. While appellant could have made his present argument more clearly, we hold that the issue was preserved.[2]

■■ The Maryland attorney-client privilege is contained in Md.Code, Courts and Judicial Proceedings, § 9–108, and reads, "[a] person may not be compelled to testify in violation of the attorney-client privilege." The attorney-client privilege

---

**2.** Appellant does not continue the argument on appeal that the statement to St. Hill was protected by the privilege applicable to communications to his private attorney, presumably because the statement in question was requested by St. Hill and was made to St. Hill, not to the attorney in connection with legal advice. *See Parler & Wobber v. Miles & Stockbridge,* 359 Md. 671, 691, 756 A.2d 526 (2000).

is a rule of evidence that prohibits disclosure of a communication made in confidence by a client to an attorney to obtain legal advice. *See Blair v. State,* 130 Md.App. 571, 605, 747 A.2d 702 (2000). The privilege includes communications to agents employed by an attorney. *See Pratt v. State,* 39 Md.App. 442, 447, 387 A.2d 779, *aff'd,* 284 Md. 516, 398 A.2d 421 (1979).

■ In *Parler & Wobber v. Miles & Stockbridge,* 359 Md. 671, 756 A.2d 526 (2000), the Court of Appeals discussed the rationale behind, as well as the importance of, the attorney-client privilege. The public policy behind the privilege is to encourage the free flow of information between clients and their attorneys, enabling attorneys to more effectively represent their clients. Because the privilege withholds relevant information from the fact finder, however, it should be narrowly construed. *Parler & Wobber,* 359 Md. at 691, 756 A.2d 526. Additionally, because this is a criminal case, we note that, "while never granted express constitutional lineage in criminal cases, the privilege is linked to the constitutional guarantee of effective assistance of counsel and that strict limitations on its application could undermine this basic guarantee." *Id.* at 691, 756 A.2d 526; *see also State v. Pratt,* 284 Md. 516, 519–20, 398 A.2d 421 (1979) (discussing the origin of the attorney-client privilege in Maryland).

The applicability of the attorney-client privilege to insured-liability or indemnity insurer communications has yet to be determined in Maryland.[3] Many jurisdictions have addressed the issue, however. As explained in an A.L.R. annotation, "[t]here are two views as to the application of the attorney-client privilege to communications between an insured and its liability or indemnity insurer: the broad view and the narrow view." John P. Ludington, *Insured–Insurer Communications*

---

**3.** We do not address the applicability of the privilege to communications by an insured to insurers other than those providing liability or indemnity coverage. The applicability of the privilege in those situations is severely limited, if applicable at all, because there is generally no duty to defend and provide counsel to the insured.

*as Privileged*, 55 A.L.R.4th 336, 340 (1987). Those jurisdictions adopting the "broad view" hold that an insured's communications to its liability or indemnity insurer with respect to an incident potentially giving rise to liability under the policy are protected from disclosure by the attorney-client privilege,[4] and many jurisdictions following the "narrow view" have found no privilege.[5] *See* Ludington, 55 A.L.R.4th at 340–41. While the annotation classifies the decisions as indicated, our review of them indicates that many turn on their facts and few, if any, truly stand for the proposition that all insured-liability or indemnity insurer communications are privileged, or the proposition that none are privileged.

One of the earliest cases to hold insured-insurer communications privileged was *People v. Ryan*, 30 Ill.2d 456, 197 N.E.2d 15 (1964). Ryan, an attorney, was found guilty of contempt of court for refusing to produce a signed statement that his client, Della Emberton, had given to her liability insurance carrier. Emberton was involved in an automobile accident that killed two people. Emberton was charged with driving while intoxicated, and she hired Ryan to represent her with respect to that charge. Ryan received, from the insurance company, the file on Emberton, including her signed statement to the agent. The state later served Ryan with a subpoena compelling him to turn over Emberton's statement and he refused, citing, in part, the attorney-client privilege. *See Ryan*, 197 N.E.2d at 15–16.

---

**4.** *See, e.g., Vann v. State,* 85 So.2d 133 (Fla.1956); *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15 (1964); *Asbury v. Beerbower,* 589 S.W.2d 216 (Ky.1979); *Enke v. Anderson,* 733 S.W.2d 462 (Mo.App.1987); *Cataldo v. County of Monroe,* 38 Misc.2d 768, 238 N.Y.S.2d 855 (1963); *Metroflight, Inc. v. Argonaut Insurance Co.,* 403 F.Supp. 1195 (N.D.Tex.1975)(applying Texas law).

**5.** *See, e.g., State v. County of Pima,* 120 Ariz. 501, 586 P.2d 1313 (App.1978); *Butler v. Doyle,* 112 Ariz. 522, 544 P.2d 204 (1975); *Alseike v. Miller,* 196 Kan. 547, 412 P.2d 1007 (1966); *State v. Anderson,* 247 Minn. 469, 78 N.W.2d 320 (1956); *State v. Pavin,* 202 N.J.Super. 255, 494 A.2d 834 (App.Div.1985); *Varuzza v. Bulk Materials, Inc.,* 169 F.R.D. 254 (N.D.N.Y.1996)(applying New York law).

The Illinois Supreme Court ruled that the statement was protected by the attorney-client privilege. The court stated: "We think the rationale of those cases upholding the privileged nature of communications between insured and insurer where the insurer is under an obligation to defend is more persuasive [than those cases holding to the contrary]." *Id.* at 17. The court further explained: "We believe that the same salutory reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton [the insured] made her statement to the investigator for her insurer." *Id.*

A case widely quoted as an example of the "narrow view" is *State v. Pavin*, 202 N.J.Super. 255, 494 A.2d 834 (App.Div. 1985), where the Superior Court of New Jersey, Appellate Division, held that the attorney-client privilege did not protect the defendant's conversation with an insurance adjuster. The defendant was involved in an automobile accident in which one person died, and a factual question presented at trial was whether the defendant was driving at the time of the accident. While defendant was in the hospital, he spoke with an insurance adjuster [6] and admitted that he was driving. At trial, the defendant filed a motion to suppress the insurance adjuster's testimony, which the trial court denied. The issue, one of first impression in New Jersey, was whether the defendant's communication to the liability insurer was protected by the attorney-client privilege.

The court began its analysis by summarizing the different outcomes reached by jurisdictions that had thus far considered the issue. *See Pavin*, 494 A.2d at 837. The court explained, "[t]he cases which have held that communications between an insured and his claims adjuster are absolutely privileged assumed that any such communication is made for the dominant purpose of transmitting information to an attorney for the

---

6. The insurance adjuster worked for the defendant's mother's insurance company. The defendant's mother's car, driven by either the defendant or the other passenger, was the one involved in the accident.

protection of the insured's interests." *Id.* The court then declined to follow this line of cases, holding instead:

[N]o blanket privilege with respect to communications between an insured and his adjuster should be countenanced. Rather, the privilege should be held to shield communications between the insured and the adjuster only where the communications were in fact made to the adjuster for the dominant purpose of the defense of the insured by the attorney and where confidentiality was the reasonable expectation of the insured.

*Id.* at 837–38. The court concluded that because the defendant had no expectation of privacy while talking to the adjuster and because a civil suit had not even been contemplated yet, the attorney-client privilege did not protect the defendant's conversation with the insurance adjuster. *See id.* at 838.

As indicated earlier, characterizing the split among the jurisdictions as a "broad view" and "narrow view" is helpful but requires further analysis. No jurisdiction has adopted a true *per se* rule of privilege for all communications between an insured and his/her/its liability or indemnity insurer, or conversely, an absolute rule of no privilege. Under the "broad view," the rationale for extending the attorney-client privilege is the assumption that the dominant purpose of the communications was for defense of a claim against the insured and that the communication would be forwarded to counsel when and if retained. *See, e.g., State ex rel Cain v. Barker,* 540 S.W.2d 50 (Mo.1976); *Asbury v. Beerbower,* 589 S.W.2d 216 (Ky.1979). While the "broad view" cases may not explicitly state that the dominant purpose of the communication is a necessary prerequisite to the extension of privilege, it is evident from the opinions that the courts based their holdings on such an assumption. *See, e.g., People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15 (1964); *Vann v. State,* 85 So.2d 133 (Fla.1956). If the assumption is not justified, the privilege does not exist.

The "narrow view" jurisdictions include assessment of the dominant purpose as an explicit element of the test for deter-

mining the existence of the attorney-client privilege, and also requires that it be under circumstances in which the insured has a reasonable expectation of confidentiality. *See, e.g., State v. Pavin,* 202 N.J.Super. 255, 494 A.2d 834 (App.Div.1985); *State v. County of Pima,* 120 Ariz. 501, 586 P.2d 1313 (App. 1978). Some courts require that the communication be made after a claim is made and at the express direction of an attorney. *See, e.g., Jacobi v. Podevels,* 23 Wis.2d 152, 127 N.W.2d 73 (1964).

Both views are fact specific. The main difference in approach lies in the weight each relevant factor is given and the conclusion reached. Both "views" consider, implicitly if not explicitly, the dominant purpose of the communication and the insured's reasonable expectation of confidentiality.

We decline to adopt a *per se* rule that all insured-liability or indemnity insurer communications are privileged based on an assumption that all such communications are for use by an insurer-appointed attorney. On the other hand, recognizing the importance of the attorney-client privilege and the link, in criminal cases, to the effective assistance of counsel, certain insured-liability or indemnity insurer communications are not discoverable. The facts of each case must be evaluated to determine whether the attorney-client privilege will serve to protect an insurer-insured communication. We adopt as a test whether the dominant purpose of the communication was for the insured's defense and whether the insured had a reasonable expectation of confidentiality. The person claiming the privilege has the burden of proof. We believe this result is consistent with the policy behind the privilege. We discern no public policy that suggests a *per se* or broader rule of privilege. If such a public policy exists, it is up to the legislature to declare it and expand the privilege accordingly.

Turning to the instant appeal, the evidence indicates that, prior to giving his statement to St. Hill, appellant retained a private attorney to defend him with respect to the criminal charges brought against him, to represent him in connection with any potential civil liability in excess of his

liability limits, and to represent him as a potential plaintiff in a civil suit. Appellant's counsel participated in the conversation between St. Hill and appellant and advised appellant that any statements he made were privileged.

Appellant gave the statement to St. Hill, an agent of State Farm, at St. Hill's insistence. St Hill testified that, if a civil suit were filed against appellant, State Farm would assign counsel to represent appellant and forward investigatory materials to that attorney.

Appellant failed to prove the existence of the attorney-client privilege. The communication in question was made at the request of St. Hill, a non-lawyer, in accordance with State Farm's normal practices, for all potential uses and purposes. This would include the evaluation of coverage and exposure. At the time of the communication, no civil claim had been made and no attorney retained by State Farm. St. Hill was acting as an adjuster, not as an agent of appellant or appellant's privately retained counsel, or as an agent of any other identified counsel. The communication was not requested by, and was not for the use of, appellant's privately retained counsel. Consequently, we conclude that there was insufficient proof that the communication was for the dominant purpose of defense and that appellant had a *reasonable* basis for believing that the communication was confidential.

Finally, we observe that effective assistance of counsel is not implicated because St. Hill was not employed by appellant's defense counsel to assist in the preparation of appellant's defense. *Cf. Pratt v. State, supra; Rubin v. State,* 325 Md. 552, 602 A.2d 677 (1992).

### 3.

Appellant moved *in limine* to have references in Gardner's autopsy report and in the medical records for appellant and Gardner redacted to omit references to the identity of the driver and the passenger, in light of his claim that he was not the driver. The motion was granted, but the exhibits were admitted into evidence and went to the jury room without

redaction. Appellant filed a motion for new trial, which was denied. Appellant contends that the court erred in doing so.

In the recent case of *Merritt v. State*, 367 Md. 17, 785 A.2d 756 (2001), the Court of Appeals explained that denials of motions for new trial can be reviewed on appeal and are normally subject to reversal only when the trial court abuses its discretion. The Court added, however, that

> when an alleged error is committed during the trial, when the losing party or that party's counsel, without fault, does not discover the alleged error during the trial, and when the issue is then raised by a motion for a new trial, we have reviewed the denial of the new trial motion under a standard of whether the denial was erroneous.

*Merritt*, 367 Md. at 31, 785 A.2d 756. If the appellate court finds that the trial court erred, the harmless error standard is utilized to determine the prejudicial effect, if any, of the error. *See id.*

Attorneys normally have a responsibility to review exhibits and to ensure that only those exhibits introduced into evidence are exhibited to a jury. In this case, however, we cannot determine that the error was appellant's fault. The record is ambiguous but is consistent with a reading that the court assumed responsibility for the redaction. Consequently, in the absence of proof of appellant's fault, we shall review the circuit court's ruling under an error standard.

■ Because appellant's motion *in limine* requesting the redaction was granted, it was error for the exhibits to be submitted to the jury without redaction. Consequently, we must determine if the error was harmless. The standard, as set forth in *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976), is

> "[w]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and reversal is mandated."

*Merritt,* 367 Md. at 31, 785 A.2d 756 (quoting *Dorsey,* 276 Md. at 659, 350 A.2d 665).

The unredacted references in the exhibits submitted to the jury were not argued to the jury. The parties relied on and argued testimony from fact witnesses and testimony from expert witnesses. The failure to redact was apparently inadvertent. Nevertheless, the issue as to the identity of the driver was hotly contested. We cannot hold that the error was harmless beyond a reasonable doubt.

**JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**