Judy LAZAR, Plaintiff,

v.

Patrick RIGGS, Defendant.

No. 03SA030.

Supreme Court of Colorado,
En Banc.

Nov. 10, 2003.

Mark A. Simon, Denver, Colorado, Attorney for Plaintiff.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Joshua R. Proctor, Englewood, Colorado, Attorneys for Defendant.

Johnson & Ayd, P.C., Denver, Colorado, Attorneys for Amicus Curiae, Colorado Defense Lawyers Association.

Grant Marylander, Denver, Colorado, Attorney for Amicus Curiae, Colorado Trial Lawyers Association.

Justice COATS delivered the opinion of the court.

Judy Lazar, the plaintiff in the underlying personal injury action, petitioned for exercise of our original jurisdiction, pursuant to C.A.R. 21. She seeks pretrial disclosure of statements made by the defendant, Patrick Riggs, to his insurance company's claims adjusters. The district court denied her motion to compel disclosure, on the grounds that the statements were taken in anticipation of litigation. We issued a rule to show cause, and because the district court's order is not supported by the record, we now make the rule absolute.

## I.

The lawsuit arises from an automobile accident that occurred on September 18, 2001. Lazar alleges that the failure of Riggs to exercise reasonable care caused the collision and her injuries. A police accident report indicated that officers cited Riggs at the scene for driving under the influence of alcohol, driving with excessive alcohol content, and careless driving.

More than nine months later, Lazar filed her lawsuit. In his Rule 26 disclosures, Riggs disclosed the existence of a resume of a recorded statement by him in his insurance company's claim file, but he objected to production of the document on the grounds that it was protected as work product. He responded to Lazar's motion to compel disclosure with authorities supporting the proposition that investigations by insurance companies in defense of claims against their insureds are shielded from discovery as work product. Without hearing the matter or making particularized findings of fact, the district court denied the motion, indicating merely that the recorded statement given to Riggs' insurer following the accident, as well as a written statement by

Riggs prepared in response to a subrogation specialist for the insurance company, was made in anticipation of litigation.

Lazar petitioned for review of that order.

## II.

■ Exercise of the supreme court's original jurisdiction is entirely within its discretion. *In re: People v. Lee,* 18 P.3d 192, 194 (Colo.2001). Relief pursuant to C.A.R. 21 is appropriate to remedy a lower court's abuse of discretion where appellate review would be inadequate. *Id.* Although interlocutory in nature, discovery orders have been reviewed by original proceedings in a number of circumstances, including where the ruling's impact will be substantial and incurable and where it raises significant questions about the administration of pretrial discovery generally that call for immediate resolution. *See Sanchez v. Dist. Ct.,* 624 P.2d 1314, 1317 (Colo.1981); *In re Attorney D.,* 57 P.3d 395, 398 (Colo.2002).

■ While the applicability of the work product doctrine to insurance claim files is not a matter of first impression in this jurisdiction, related developments in this and other jurisdictions have brought into question the continued vitality of some of our prior pronouncements. As the argument and ruling below indicate, distinctions between claims by an insured and claims by third parties against an insured, which we have recognized in related contexts and other jurisdictions have applied to the work-product context, have made unclear the discoverability of third-party insurance claim files in this jurisdiction as well. Because these discovery issues appear to be of increasing significance in the jurisdiction and yet remain resistant to review through the normal appellate process, we consider it appropriate to exercise our original jurisdiction.

## III.

Rule 26 limits the otherwise broad discovery permitted by the Colorado Rules of Civil Procedure of documents and tangible things, to the extent that they were obtained by or for another party or his representative in anticipation of litigation. *See* C.R.C.P.

26(b)(3). The general contours of the phrase, "in anticipation of litigation," as it appears in the rule, and the test for determining when documents fall within the protections of the rule, have been well-established in this jurisdiction for more than twenty years. In *Hawkins v. Dist. Ct.*, 638 P.2d 1372, 1377 (Colo.1982), we made clear that the rule was not intended to protect materials prepared in the ordinary course of business, whether litigation had already commenced or not, *id.* at 1378; and that "the general standard to be applied is whether, in light of the nature of the document and the factual situation in the particular case, the party resisting discovery demonstrates that the document was prepared or obtained in contemplation of specific litigation." *Id.* at 1379; *see also Nat'l Farmers Union Prop. and Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1047 (Colo.1986); *see generally* 8 C. Wright, A. Miller & R. Marcus Federal Practice and Procedure § 2024 (2nd ed. 1994 & Supp. 2003).

In *Hawkins*, we also expressly rejected the notion that Rule 26(b)(3) insulates insurance company investigations merely because they always deal with potential claims. *Hawkins*, 638 P.2d at 1378. Instead, we drew almost the opposite conclusion. Because a substantial part of an insurance company's business is to investigate claims made by an insured against the company or by some other party against the insured, it must be presumed that such investigations are part of the normal business activity of the company and that reports and witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials. *Id.* (relying on *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 373 (N.D.Ill. 1972)).

■ Therefore, "[i]n the case of an insurance company defending a claim and asserting that its reports and witness' statements are trial preparation materials under C.R.C.P. 26(b)(3), the insurance company has the burden of demonstrating that the document was prepared or obtained in order to defend the specific claim which already had arisen and when the documents were prepared or obtained, there was a substantial probability of imminent litigation over the claim or a lawsuit had already been filed." *Hawkins*, 638 P.2d at 1379. At the same time, we also noted that a showing that a claims adjuster, or even a lawyer not acting as a legal counselor for the insurer, conducted an investigation of a claim, during which he compiled various reports and statements, would not be sufficient by itself to overcome the presumption of an ordinary business activity. *Id.*

■ An insurance company owes a duty to its insured (but not to a third-party with a claim against its insured) to adjust a claim in good faith. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984). As a result, we have noted that insurance information may be relevant or may lead to relevant evidence in an action by an insured against its insurer for a bad faith breach of its insurance contract, even though the same information might not be relevant in a personal injury claim by a third-party against the insured; and that the scope of discovery of insurance information should therefore be correspondingly broader in the former case. *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1192 (Colo.2002). We have nowhere suggested, however, that an insurance company owes any less of a duty to investigate and settle claims of third parties against its insureds arising under their insurance policies, or that the results of such investigations are somehow entitled to greater protection from discovery.

Quite the contrary, in *Kay Labs. v. Dist. Ct.*, 653 P.2d 721 (Colo.1982), we expressly rejected such an attempt to limit *Hawkins*, reiterating the conclusion that "it is as much a part of an insurance company's normal business activity to investigate potential claims by third parties against its insureds as it is to investigate potential claims by its insureds against itself." *Kay Labs.*, 653 P.2d at 722–23. While *Kay Labs.* involved claims against a self-insured hospital for actions by its employee, we extended the rationale of *Hawkins* in that case to deny protection under Rule 26 for the hospital's investigation, as if it were an insurance company.

In *Silva*, we relied on the opinion of a federal magistrate for the proposition that "[w]hen a liability insurer investigates a third-party personal injury claim, the investigation is made in anticipation of claims which, if denied, will likely lead to litigation." *Silva*, 47 P.3d at 1191. Unlike the federal district court, however, we did not infer from this proposition that it is the possibility of litigation that "provides the insurer the impetus" to investigate the claim, and therefore we did not similarly infer that insurance investigations of third-party claims are always conducted in anticipation of litigation. *See Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D.Colo.1993).

■ *Silva* involved the disclosure of insurance company reserves and settlement authority rather than the investigation of a third-party claim. Not only does our opinion in that case fail to imply any rejection of the *Hawkins/Kay Labs.* rationale concerning the investigation of third-party claims; our other holdings distinguishing first from third-party claims strongly support that rationale. With respect to actions by insureds for bad faith breach of insurance contracts, we have actually imposed a higher duty of care on insurance companies in denying or delaying the approval of claims by third parties against insureds than in denying claims by insureds themselves. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo.1985); *Trimble*, 691 P.2d at 1142. Because of the quasi-fiduciary duty typically created by insurance contracts, both to investigate and settle claims arising from the policies and to defend actions brought against insured parties, an insurer must exercise reasonable care with respect to third-party claims but merely avoid recklessly rejecting claims by an insured party himself. *Id.*

■ An insurer therefore clearly has a contractual duty to determine whether third-party claims are within an insured's coverage and, if so, to resolve them. Both by contract and statute, *see* § 10–3–1104(1)(h)(III), 3 C.R.S (2003); § 10–3–1104(1)(h)(VI), 3 C.R.S. (2003), it has an obligation to investigate third-party claims in the ordinary course of its business. Whether or not de-

nied third-party claims are actually more likely to result in litigation, even a virtual certainty of litigation after denial could not alter the insurer's obligation to assess the claim and determine coverage in the first instance. To the extent that the third-party nature of a claim indicates less about anticipation of litigation than about the insurer and insured's commonality of interests in defending against such claims, it implicates the work product doctrine less than the degree of confidentiality that should be accorded insurance relationships. No insurer/insured privilege has been recognized by this court or the General Assembly. *Cf.* CRE 501; § 13–90–107, 5 C.R.S. (2003).

Where an insurance contract includes a right and duty to defend (as it typically does), in addition to an obligation to investigate and settle claims arising under the policy, an insurance company's investigation of third-party claims may very well "shift from an ordinary business activity to conduct in anticipation of litigation." *See Hawkins*, 638 P.2d at 1378. Because there is no bright line between these two activities in all cases, however, the nature of the document in question and the factual situation in the individual case must always be considered. As we held in *Hawkins*, it is the burden of the insurance company resisting disclosure to demonstrate that the documents in question were prepared in order to defend against a specific claim and that a lawsuit over that claim had already been filed or was imminent. Merely demonstrating that a claims adjuster conducted an investigation to determine whether a claim falls within its insured's coverage is no more sufficient to demonstrate preparation in anticipation of litigation when the claim is made by a third party than when it is the claim of an insured himself. *See id.* at 1379.

IV.

The recorded statements of the defendant that are at issue in this case appear to have been taken at the direction of his insurance company well before the initiation of this

lawsuit.[1] Without further explanation or findings, the district court denied disclosure on the grounds that the documents were prepared in anticipation of litigation.[2] In light of the arguments and authorities advanced by the parties, it appears that the district court may have felt that the third-party nature of the claim was dispositive of the question and, in itself, was sufficient to justify protection under Rule 26(b)(3). In any event, as in *Hawkins*, there is nothing in the pleadings and documents filed with this court demonstrating that the statements enjoyed the qualified immunity from discovery provided by the rule for documents prepared in anticipation of litigation.

## V.

The rule is therefore made absolute and the matter is remanded to the district court for further proceedings consistent with this opinion.

Justice KOURLIS dissents.

Justice KOURLIS dissenting:

Because I agree with the trial court's determination that Riggs' statements to his insurance company were made in anticipation of litigation and are therefore protected from discovery pursuant to C.R.C.P. 26(b)(3), and because I believe that Riggs' statements also fall within the attorney-client privilege and are protected pursuant to C.R.C.P. 26(b)(1), I respectfully dissent. In summary, in my view, when an insured makes a statement to his own insurance company about the circumstances of an accident, the insured is not only complying with the contractual mandate that he cooperate with his insurance company in the investigation, but he is also expecting that the insurance company will use the information in providing a defense should litigation ensue.

## I. Introduction

Under our cases, as well as those of other states around the nation, this factual scenario presents two issues: whether the document is protected either by the work product doctrine or by the attorney-client privilege. The majority concludes that the materials containing Riggs' statements are not work product because they were not prepared in anticipation of litigation and the statements are therefore discoverable by Lazar pursuant to C.R.C.P. 26(b)(3). The majority does not address questions of attorney-client privilege other than in a footnote. Although the work product protection and the attorney-client privilege provide independent grounds for contesting discovery, they often accompany one another in cases similar to the one at bar. *See e.g., A v. Dist. Court*, 191 Colo. 10, 550 P.2d 315 (1976); *Nat'l Farmers Union Prop. and Cas. Co. v. Dist. Court*, 718 P.2d 1044 (Colo.1986). In my view, both doctrines must be analyzed in the context of this case.

## II. Background

The attorney-client privilege and the work product exemption are distinct but related theories, arising out of similar policy interests. *A v. Dist. Court*, 550 P.2d at 327 (citing to *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Generally, the attorney-client privilege protects communications between the attorney and the client, and the promotion of such confidences exists for the benefit of the client. *Id.; see also* 17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 250:4 (3d ed.2000, updated 2003) ("Evidentiary privileges have typically focused on relationships in which the public interest is served by encouraging openness: marital relationships, attorney-client relationships, doctor-patient relationships, clergy-confessor relationships, and so on."). On the other hand, the work product

---

1. There is no suggestion here of a right or duty of the insurance company to defend against the criminal charges brought against its insured.

2. Riggs also asserts that his statements are protected by the attorney-client privilege. Because this was not the basis of the district court's order denying disclosure, we do not address it, noting only that the attorney-client privilege is entirely statutory, *see* § 13–90–107, 5 C.R.S. (2003), and cannot apply to documents created before the existence of an attorney-client relationship between the insurance company and its lawyer. *See Kay Labs.*, 653 P.2d at 723 n. 3 (expressly rejecting any suggestion to the contrary in *Bellmann v. Dist. Ct.*, 187 Colo. 350, 531 P.2d 632 (1975)).

doctrine generally applies to documents and tangible things prepared in anticipation of litigation or for trial, and its goal is to ensure the privacy of the attorney's trial preparation work from opposing parties and counsel. *A,* 550 P.2d at 327; *see also Denver Post Corp. v. Univ. of Colorado,* 739 P.2d 874, 881 (Colo. App.1987) ("The work product privilege exists not to protect a confidential relationship, but to promote fairness in the adversary system by safeguarding the fruits of an attorney's trial preparations, which have been paid for by his client, from being used without cost by his opponent.").

### A. The Work Product Doctrine

First, it is important to recognize what materials may be characterized as work product. Normally, materials entitled to protection contain an attorney's mental processes reflected in interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs. *People v. Martinez,* 970 P.2d 469, 475 (Colo.1998) (quoting *Hickman,* 329 U.S. at 511, 67 S.Ct. 385). This court has recognized, however, that the work product doctrine includes the work of investigators and other agents of counsel. *Id.* at 474 n. 11 (citing to *United States v. Nobles,* 422 U.S. 225, 238–239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).[1] Furthermore, although statements by witnesses do not contain an attorney's mental impressions or strategies, they may constitute work product by virtue of their compilation by an attorney. *Id.* at 475. Thus, the mere fact that Riggs made this statement to a non-attorney insurance adjuster, or the fact that his statement does not contain the mental impressions of an attorney, does not per se preclude the statements from qualifying as work product.

After determining what materials may constitute work product, the next step is determining whether the materials were prepared in anticipation of litigation. C.R.C.P. 26(b)(3) protects from discovery materials prepared in anticipation of litigation unless the party seeking discovery establishes a substantial need for the materials and an inability to obtain the materials from other sources without undue hardship. Unlike materials prepared in anticipation of litigation, materials prepared in the ordinary course of business are discoverable. *Hawkins v. Dist. Court,* 638 P.2d 1372, 1377 (Colo.1982). It is the burden of the party contesting discovery to establish that the document was prepared in anticipation of litigation. *See id.* at 1375. However, once the party contesting discovery establishes that the document was indeed prepared in anticipation of litigation, the burden shifts to the party seeking discovery to show substantial need and undue hardship. *Id.* at 1376.

In *Hawkins,* we set forth a standard for determining whether materials are prepared in anticipation of litigation. This court stated that "[t]he general standard to be applied is whether, in light of the nature of the document and the factual situation in the particular case, the party resisting discovery demonstrates that the document was prepared or obtained in contemplation of specific litigation." *Hawkins,* 638 P.2d at 1379; *see also Farmers,* 718 P.2d at 1047–1048. This court went on to say that

> [b]ecause a substantial part of an insurance company's business is to investigate claims made by an insured against the company or by some other party against the insured, it must be presumed that such investigations are part of the normal business activity of the company and that reports and witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials.

*Id.* at 1378. However, *Hawkins* also clarified that "under appropriate circumstances," an insurance company's investigation of a claim may shift from an ordinary business activity to conduct in anticipation of litigation. *Id.* For several reasons, I think that the appropriate circumstances alluded to in *Hawkins* exist in this case and support the trial court's determination that the materials

---

1. In fact, C.R.C.P. 26(b)(3) explicitly protects materials prepared in anticipation of litigation by a party's representative including attorneys, consultants, sureties, indemnitors, *insurers,* and agents.

containing Riggs' statements were prepared in anticipation of litigation.

Applying the standard in *Hawkins* requires a court to analyze both the "nature of the document" and the "factual situation in the particular case" to determine whether the materials were prepared in "contemplation of specific litigation." In *Hawkins*, both the nature of the document sought to be discovered and the factual situation surrounding the discovery request were markedly different from the facts of this case. First, the document in *Hawkins* comprised statements of a non-party witness as opposed to the insured's own statements. Second, the factual situation in *Hawkins* involved an investigation by the insurance company that was initiated to adjust the insured's own loss by a fire, with no litigation contemplated. In contrast, the factual situation in this case involves an investigation by a liability insurer relating to a prospective third-party personal injury claim. Hence, I do not view *Hawkins* as controlling.

Three years later, in *Kay Labs., Inc. v. Dist. Court*, 653 P.2d 721 (1982), this court rejected the argument that materials prepared in the investigation of third-party claims deserve greater protection from discovery than materials prepared during the investigation of first-party claims. We observed that the party contesting discovery in that case offered "no rationale for holding that the former [third-party claims] should be entitled to greater protection from discovery under C.R.C.P. 26 than the latter [first-party claims], and we do not discern one." *Id.* at 723. We repeated the language from *Hawkins* relative to the burden of the party opposing discovery to demonstrate that the document was prepared to defend against a specific claim, and concluded that the hospital had not met that burden. *Id.* at 722. However, again, the nature of the document and the particular factual situation in *Kay* are markedly different from the case at bar.

In *Kay*, a patient sued a hospital and a product manufacturer seeking damages she alleged occurred when a chemical ice pack administered by the hospital leaked. The document at issue was a pre-printed form filled out by a nurse in triplicate within 6 to 8 hours of the time of the incident. Such forms were routinely filled out by hospital personnel when any incident occurred which "could possibly result in litigation against the hospital." *Id.* This incident report, like incident reports generally, was prepared in accordance with hospital routine. *Id.* The hospital admitted that the reports were prepared both for purposes of statistical analysis for loss prevention as well as to defend against possible lawsuits. *Id.* The hospital was self-insured. Ultimately, this court viewed the incident report as a document prepared in the ordinary course of business rather than a document prepared in anticipation of particular litigation. *Id.* at 722 n. 1.

To the contrary, I suggest that Riggs' statement to his insurer was indeed taken in anticipation of a specific claim that, if denied, would likely lead to litigation. I further suggest that Riggs had a responsibility under his insurance contract to cooperate with his insurance company in investigating the accident—a responsibility that finds no parallel in *Kay*.

More broadly, I note that since our decision in *Kay*, we have indeed adopted a rationale that was lacking in *Kay* for treating third-party claims differently than first-party claims in the context of pretrial discovery.

In *Silva v. Basin Western, Inc.*, 47 P.3d 1184 (Colo.2002), this court addressed the issue of whether insurance reserves and settlement authority fall within the scope of discovery. We noted that "[t]he relationship between a plaintiff and the defendant's insurer in third-party personal injury tort claims such as this one differs significantly from the relationship between an insured party and his insurer in a first-party dispute between them." *Id.* at 1191 (citing to *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D.Colo.1993)). We stated:

> Third-party personal injury tort claims involve liability investigations. When a liability insurer investigates a third-party personal injury claim, the investigation is made in anticipation of claims which, if denied, will likely lead to litigation. Although a claim may be settled short of legal action, there is always the possibility

that a claim will end in litigation. In contrast, when a first-party claim between an insured and his or her insurer is at issue, the insured is asking for payment under the terms of the insurance contract between him and the insurance company. The insurance company owes the insured a duty to adjust his claim in good faith. The scope of discovery of insurance information should therefore be broader in a first-party claim between an insured party and his insurer than in a third-party personal injury claim.

*Id.* at 1191–1192 (internal citations omitted).

The Washington Supreme Court has also opined on the reasons for treating the insured-insurer relationship differently. In *Heidebrink v. Moriwaki,* 104 Wash.2d 392, 706 P.2d 212 (1985), that court examined the issue of whether the statement of an insured to his or her insurance company is protected by the work product doctrine. In terms of the standard enunciated in *Hawkins,* both the nature of the document and the factual situation in *Moriwaki* are virtually identical to the facts of this case. In *Moriwaki,* the materials at issue consisted of tape-recorded statements made by the insured to his insurance company shortly after an automobile accident. An individual initiated a third-party personal injury claim arising out of injuries she sustained in that accident. In holding that statements made by an insured to an insurer were protected from discovery under Washington's version of Rule 26(b)(3), the Supreme Court of Washington noted that the insured was contractually obligated to cooperate with his insurance company in the investigation, and that such obligation created a reasonable expectation by the insured that the insurance company would not use his statement against him. *Id.* at 216–217. On the other hand, the court also noted that the insurer has a contractual obligation to defend the insured, and can be expected to transmit the statement to the attorney. That court stated:

> In essence, the insurance company has been retained to provide an attorney and the expectation is that statements made by the insured will be held in confidence. . . . If the statement were made di-

rectly to the selected attorney, it would obviously have been made in anticipation of litigation. The contractual obligation between the insured and insurer mandates extension of this protection to statements made by an insured to his insurance company.

*Moriwaki,* 706 P.2d at 217.

With both our language in *Silva* and the Washington Supreme Court's analysis in *Moriwaki* in mind, it is easy to see the distinction between *Kay* and the case before the court today. The document at issue in *Kay* was prepared in the ordinary course of business by a self-insured hospital. In contrast, Riggs made his statement at the direction of his insurance company after an automobile accident involving personal injury. The statement had no use other than to investigate and potentially defend against claims. I agree with the reasoning articulated in *Moriwaki* to the effect that Riggs had a contractual duty to cooperate, in exchange for which the insurance company had a contractual duty to defend him. Under those circumstances, neither the holding of *Hawkins* nor of *Kay* prevents this court from protecting the insured's statements to his insurance company from discovery.

Since I view the materials containing Riggs' statements as having been prepared in anticipation of litigation, the trial court must address the issue of whether the plaintiff has a substantial need for the documents and cannot otherwise obtain the information. At the present stage of the litigation, Lazar has not conducted a deposition of Riggs. Rather, Lazar seeks to compel the disclosure of Riggs' statements without such particularized need. I would remand the case to the trial court to consider whether Lazar can make the requisite showing of need.

### B.  Attorney–Client Privilege

Furthermore, although I would certainly not adopt a per se rule of privilege for insured-insurer communications, in my opinion, the communications between Riggs and his insurer may fall within the attorney-client privilege and are non-discoverable pursuant to C.R.C.P. 26(b)(1).

For this proposition, I need look no further than *Bellmann v. Dist. Court,* 187 Colo. 350, 531 P.2d 632 (1975). In *Bellmann,* this court addressed the same issue presented in this case: whether statements regarding an automobile accident, made by an insured to his insurer, were subject to discovery by an adverse party. The discovery was sought in connection with a criminal DUI prosecution. The party opposing discovery reasoned that because his insurance company was contractually obligated to defend him with counsel of their choosing against any civil action arising out of the accident, and because he was obligated under the terms of his insurance policy to cooperate fully with the insurer, the statements to the insurance adjustor were, in effect, given to the attorney retained by the insurer for the purpose of defending him. *Id.* at 633. This court agreed and concluded that the communications between the insured and the insurer fell within the attorney-client privilege. *Id.* at 634. This court relied heavily on the reasoning in *People v. Ryan,* 30 Ill.2d 456, 197 N.E.2d 15 (1964), to support its holding.

In *Ryan,* the Illinois Supreme Court addressed whether an insured's statements made to an insurance company were privileged. A primary factor in making this determination was the character of the communication. *Id.* at 17. The Illinois Supreme Court analyzed a number of analogous cases from other jurisdictions and concluded that under the insurance contract,

> the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured.

*Id.*

Another court has suggested that the appropriate inquiry is whether the "dominant purpose" of the communication was for the defense of the insured and whether the insured had a "reasonable expectation of confidentiality." *Cutchin v. State of Maryland,* 143 Md.App. 81, 792 A.2d 359, 366 (2002).

In *Kay,* we limited the holding of *Bellmann*[2] to documents prepared once the attorney-client relationship already exists. However, the language in *Kay* arises out of the context of the facts of that case: namely, a situation in which the hospital was the self-insured defendant in a later lawsuit. We wrote that the attorney-client relationship between the hospital and *its* attorney must exist at the time of document creation for the privilege to apply. Here, presumably the question would be whether the insurance company had retained counsel to represent Riggs at the time of the statement. Our language in *Silva* belies such a simple dividing point. Again, in *Silva,* we recognized that third-party liability investigations are made "in anticipation of litigation" just by the nature of the system. *Silva,* 47 P.3d at 1191–1192. If our holding in *Kay* intended to preclude any attorney-client privilege claim as to a document prepared prior to actual retention of an attorney, it cut a broad swath indeed. I would not read it so expansively, but would rather limit it to its facts and would proceed with the analysis of the character of the communication at issue here. Among the facts I would consider would be: when the statement was made in relation to the lawsuit; whether criminal charges had then been filed against Riggs; whether Lazar had already made claims against Riggs' insurance company; and the circumstances of the communication to whom it was made, in what setting and upon what prompting.

---

2. We stated:
   Documents made for an insurance company acting as the agent of an attorney are also covered by the privilege, but, as we make clear in text, the attorney-client relationship between the insurance company and its lawyer must exist at the time the documents are created for the privilege to apply. To the extent that *Bellmann* brought preexisting documents within the scope of the attorney-client privilege, we hold that that case is no longer good law. *Kay,* 653 P.2d at 723 n. 3 (internal citations omitted).

For these reasons, in order to determine the propriety of affording attorney-client privilege protection to this document, I would remand to the trial court for particularized findings in this arena as well.

### III.   Conclusion

The majority's decision today puts the insured in a potentially precarious situation. On one hand, if he fulfills his contractual duty to cooperate and provides a candid and open narrative of the events surrounding the claim, he risks exposing incriminating facts or mental impressions.  On the other hand, if he declines to provide the insurance company with all the information, he could risk an effective defense or even coverage.  Although I do not advocate a blanket discovery exclusion for communications between insured and insurer, I do support a case-by-case analysis.  In that analysis, a trial court should determine whether the purposes and requirements of either the work product doctrine or the attorney-client privilege would protect the document.  For these reasons, I respectfully dissent from the majority opinion, and would remand the case to the trial court for findings of fact and conclusions of law in accordance with this opinion.