In re Stephen COMPTON, Plaintiff,

v.

SAFEWAY, INC., Defendant.

No. 07SA50.

Supreme Court of Colorado,
En Banc.

Oct. 1, 2007.

Fogel, Keating, Wagner, Polidori & Shafner, P.C., Gregory W. Heron, Kristin D. Sanko, Denver, Colorado, Attorneys for Plaintiff.

Anstine, Hill, Richards & Simpson, Jeffrey J. Richards, Ronald C. Hill, Denver, Colorado, Attorneys for Defendant.

Justice EID delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we review the trial court's order denying Petitioner Stephen Compton's motion to compel discovery in his personal injury lawsuit

against Respondent Safeway, Inc. Specifically, Compton seeks discovery of two recorded statements that were made by two Safeway employees who witnessed the incident giving rise to Compton's suit. Safeway withheld production of the statements, citing the attorney work-product and attorney-client privileges, and the trial court refused to compel discovery. We issued a rule to show cause. Because the statements were made to Safeway's own risk management and loss control department during the ordinary course of its claim investigation, we hold that they are not protected by the attorney work-product privilege. We also hold that the statements do not fall within the scope of the attorney-client privilege, as Safeway's attorneys were not involved in the investigation that produced the statements. Accordingly, we now make the rule absolute.

## I.

Compton had a job delivering food products for Pepperidge Farm. On February 21, 2005, during the course of his deliveries, Compton stopped at a Safeway store located in Denver. While carrying boxes of food products destined for the store's basement inventory, Compton tripped over a pallet jack and injured his ankle—an injury that required medical treatment and surgery.

Safeway is self-insured and maintains its own risk management and loss control department to handle third-party injury claims. A Safeway employee completed a two-page accident report concerning Compton's fall. The report contains Compton's name, the name of the Safeway employee, the address of the location of the accident, and a two-sentence description of the accident. The report was submitted to Safeway's claims department on February 22, 2005.

Compton subsequently retained an attorney, who contacted Safeway via letter dated April 12, 2005. The letter expressed Compton's position that Safeway was liable for Compton's injuries and requested that Safeway inform its insurance provider of Compton's claim. The letter did not threaten a lawsuit. One of Safeway's claims adjusters, Tiffany Heimbichner, received the letter and thereafter ordered that recorded statements

be taken from two Safeway employees, Phillip Revello and Todd Spriggs, who had witnessed Compton's fall. The statements were recorded on May 1, 2005. Safeway completed its investigation of the incident and, in a letter dated June 7, 2005, informed Compton that his claim was denied because Safeway had determined it was not at fault.

Compton filed a lawsuit on January 23, 2006, alleging claims for common law negligence and violation of Colorado's Premises Liability Act, section 13–21–115, C.R.S. (2006). During discovery, Compton requested copies of Revello's and Spriggs's recorded statements ("the Statements"). Safeway objected on the ground that the Statements were protected from discovery by the attorney work-product and attorney-client privileges. Compton brought a motion to compel discovery, which the trial court denied.

Compton sought review of the trial court's order by filing a Rule 21 petition with this Court, and we issued a rule to show cause. We now make that rule absolute.

## II.

Compton first argues that the Statements are not privileged under the attorney work-product doctrine because they were prepared in the ordinary course of business, not in anticipation of litigation. We agree.

We begin with the basic principle that discovery "rules should be construed liberally to effectuate the full extent of their truth-seeking purpose." *Cameron v. Dist. Court,* 193 Colo. 286, 290, 565 P.2d 925, 928 (1977). Accordingly, a party may obtain discovery of any matter that is relevant and not privileged. *See* C.R.C.P. 26(b)(1).

Materials prepared in anticipation of litigation are generally privileged from discovery. *See* C.R.C.P. 26(b)(3). In *Hawkins v. District Court,* 638 P.2d 1372 (Colo.1982), we set forth the standard to be applied in determining whether materials prepared during an insurance company's investigation of a claim fall within the scope of this privilege. We stated that the question was "whether, in light of the nature of the document and the factual situation in the particular case, the

party resisting discovery demonstrates that the document was prepared or obtained in contemplation of specific litigation." *Id.* at 1379. Indeed, there is a presumption that "witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records, as distinguished from trial preparation materials." *Id.* at 1378; *accord Lazar v. Riggs,* 79 P.3d 105, 107 (Colo.2003) ("Because a substantial part of an insurance company's business is to investigate claims ... it must be presumed that such investigations are part of the normal business activity of the company....").

■■■ To overcome this presumption, the party opposing discovery must show that the witness statements were obtained after a specific claim had arisen, for the purpose of defending that claim, and at a time when "there was a *substantial probability of imminent litigation over the claim* or a lawsuit had already been filed." *Hawkins,* 638 P.2d at 1379 (emphasis added). *Hawkins* makes clear that a claims adjuster's mere investigation, in the ordinary course of business, of possible claims against an insured is insufficient to invoke the protection of the attorney work-product privilege under Rule 26(b)(3). *See id.; see also Lazar,* 79 P.3d at 107 ("[A] showing that a claims adjuster ... conducted an investigation of a claim, during which he compiled various reports and statements, would not be sufficient by itself to overcome the presumption of an ordinary business activity."). Moreover, an insurer has "an obligation to investigate third-party claims in the ordinary course of its business." *Lazar,* 79 P.3d at 108.

The *Hawkins* standard applies to the case at bar. Safeway insures itself through a captive insurance company. *See* Defendant's C.R.C.P. 26(a)(1) Initial Disclosures at 2. In other words, Safeway is not insured by an independent insurance company. Instead, it owns the company that insures its risks. *See* Lee R. Russ & Thomas F. Segalla, eds., *Couch on Insurance* § 39:2 (3d ed.2005) (defining "captive insurance company"). In all other respects, however, a captive insurance company, such as the one owned by Safeway, functions like a traditional insurance compa-

ny. *See id.* For example, it collects premiums from the insured and investigates liability claims made by third parties against the insured. *See id.*

*Hawkins* focuses on function, not status; the relevant inquiry centers on the party's course of business, not its ownership. *See Lazar,* 79 P.3d at 107 (describing *Hawkins* as resting on the rationale that claims investigation must be presumed to be part of an insurance company's ordinary course of business). Like other insurance companies, the ordinary business of Safeway's risk management and loss control department is to investigate and evaluate claims brought against Safeway by third parties such as Compton. The fact that, unlike traditional insurance companies, insurance is not Safeway's only line of business is irrelevant. Claims investigation is an ordinary activity in the business of insurance, and it became one of Safeway's ordinary business activities when Safeway chose to become self-insured. In short, the risk management and loss control department of Safeway functioned as a traditional insurance company for purposes of investigating, and ultimately denying, Compton's claim. Therefore, it is appropriate to evaluate Safeway's discovery objection under the *Hawkins* standard. Indeed, Safeway does not dispute that *Hawkins* applies to this case; rather, it argues that the district court correctly applied *Hawkins* to deny Compton's motion to compel.

We disagree and determine that Safeway cannot overcome the presumption of discoverability under *Hawkins.* Safeway has presented no evidence to rebut the presumption that the Statements were recorded in the ordinary course of business of its risk management and loss control department. Safeway argues that the affidavit of Tiffany Heimbichner, the Safeway claims adjuster who ordered the Statements, provides the requisite rebuttal. Heimbichner's affidavit states in pertinent part that she ordered the Statements "[i]n response to the attorney representation letter [dated April 12, 2005] and in anticipation of imminent litigation in this dispute...." However, this statement simply restates the language of *Hawkins* and Rule 26(b)(3). Importantly, Heimbichner's affida-

vit recites no facts from which a court could conclude that the recording of the Statements was something other than the usual and ordinary activity attendant to Safeway's normal procedure for investigating claims. *Cf. Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134–35 (S.D.Ga.1982) (applying the work-product privilege where deposition testimony of senior claims adjuster indicated he was assigned to perform additional investigation because the insurer's initial investigation revealed suspicious circumstances that suggested the claim was fraudulent).

Moreover, contrary to Safeway's assertion, the Statements were not recorded at a time when there existed a substantial probability of imminent litigation over Compton's claim. First, Safeway cannot establish that litigation was substantially probable. Undoubtedly, litigation was a possibility. However, litigation is possible in every insurance claim, and this fact alone is insufficient to justify interfering with the normal and intended function of the discovery rules. *See Hawkins*, 638 P.2d at 1378–79 (discussing the unreasonable restriction of discovery that would occur if the attorney work-product privilege protected the mere investigation of an insurance claim in the ordinary course of business). In this case, Safeway sent Compton's attorney a letter dated June 7, 2005, which stated, "Please be advised that our investigation is concluded at this time. The facts suggest no liability on the part of Safeway.. . ." Thus, by Safeway's own admission, the Statements were recorded during Safeway's investigation of Compton's claim, which, as discussed above, entailed only a possibility, not a probability, of litigation.

Furthermore, Safeway cannot establish that litigation was imminent at the time the Statements were recorded. In *National Farmers Union Property & Casualty Co. v. District Court*, we found that the attorney work-product privilege did not protect a memorandum of an insurance company's claim investigation because the memorandum was prepared *before* the claim was denied and litigation did not become imminent until *after* the claim was denied. 718 P.2d 1044, 1048 (Colo.1986). In the present case, Safeway did not deny Compton's claim until June 7, 2005—over a month *after* it had recorded the Statements and otherwise conducted its investigation. Consequently, the Statements constitute ordinary business records produced at a time when litigation was not imminent.

Safeway argues that its ordinary investigation consisted solely of the initial completion and review of the accident report filed by a Safeway employee the day after Compton's fall. Safeway claims that it launched a second investigation in response to the April 12th letter from Compton's attorney and that this investigation, which included the recording of the Statements, was done in anticipation of litigation, not in the ordinary course of business.

The evidence does not support Safeway's argument. First of all, the initial accident report contained only a two-sentence description of the incident, and it was prepared by a store clerk, not a claims adjuster. The report merely served to confirm the occurrence of an incident; it was not the product of an investigation by Safeway's claims department. Safeway's June 7th letter to Compton's attorney confirms that Safeway's "investigation is concluded *at this time* " (emphasis added), which belies Safeway's claim that its investigation concluded when the accident report was submitted on February 22, 2005. Furthermore, the January 26, 2007 affidavit submitted by Heimbichner contains no information about Safeway's ordinary procedure for investigating injury claims, nor does it describe how the recording of the Statements deviated from Safeway's ordinary course of business.

In short, the Statements were prepared at the direction of a Safeway claims adjuster in the ordinary course of Safeway's ordinary claim investigation, not in anticipation of litigation. Litigation did not become imminent until Safeway denied Compton's claim over a month after the Statements were recorded. Because Safeway failed to meet its burden of showing a substantial probability of imminent litigation, the trial court erred when it denied Compton's motion to compel discovery of the Statements.

■ We also agree with Compton that the Statements are not protected by the attor-

ney-client privilege. The record demonstrates that the Statements were not "communicated by or to [Safeway] in the course of obtaining counsel, advice, or direction with respect to [Safeway's] rights or obligations." *People v. Trujillo,* 144 P.3d 539, 542 (Colo. 2006) (citations and quotations omitted). In fact, there is no evidence that any Safeway attorney was even involved in the investigation of Compton's claim. Therefore, any reliance on this privilege by the trial court was also error.

## III.

For the foregoing reasons, we now make absolute the rule to show cause. The trial court is ordered to vacate its prior ruling on Compton's motion to compel discovery and to grant Compton's motion to compel discovery of Revello's and Spriggs's recorded statements.